. HERBERT E. WEBSTER & others vs. JOHN A. WEBSTER.

Middlesex. December 3, 1901. — January 3, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Partnership*, Good will. *Contract*, Construction.

In a bill to restrain a former partner of the plaintiffs who had sold out to them from soliciting trade from former customers, it was alleged, that the partnership between the plaintiffs and the defendant was formed for a term of two years, that all the stock in trade belonged to the defendant, that the partnership agreement provided, that upon the termination of the partnership by limitation the defendant should sell to the plaintiffs " the property and assets " of the firm upon the receipt of a sum equal to the value of such property and assets " as it appears by the books of the firm," and that in pursuance of this agreement the defendant conveyed to the plaintiffs " the property and assets belonging to the firm," the " goods and accounts being shown " on a certain inventory referred to. On demurrer, *held*, that the bill must be dismissed; that it showed no sale of good will beyond that, if any, which pertained to the ownership of the goods, and that each partner was at liberty to gain such advantage as he could from his relations to the former business.

Whether one who has sold the good will of a business of such a kind that he is not precluded from establishing a competing business has a right personally to solicit the trade of his former customers, is an open question in this Commonwealth.

BILL IN EQUITY to restrain the defendant from soliciting trade from former customers of John A. Webster and Company, an expired partnership which had consisted of the defendant and three of the plaintiffs, and praying also for an account, filed December 21, 1900.

The partnership agreement was as follows:

" Articles of copartnership made and concluded this 1st day of April, 1898, by and between John A. Webster of Boston, Herbert E. Webster of Lowell, Frank E. Baker of Lowell, and Lewis O. Stoker of Saugus. Said parties have agreed to associate together for the purpose of carrying on the business of manufacturing, buying and selling druggist's glassware and sundries. The style of said partnership shall be John A. Webster & Co., and shall continue for a term of two years from April 1, 1898, except in case of the death of either of said partners within said time, as hereinafter provided. Said John A. Webster is the proprietor of

the entire capital stock of said copartnership. All profits which may accrue to said copartnership shall be divided, and all loss happening to said firm from any cause, and all expenses of the business, shall be borne by said parties in the following proportions: John A. Webster, one half: Herbert E. Webster, one sixth: Frank E. Baker, one sixth: and Lewis O. Stoker, one sixth. Said Herbert E. Webster, Frank E. Baker, and Lewis O. Stoker to devote their entire time and attention to the business of said firm as salesmen. Said John A. Webster shall have entire and exclusive charge of buying merchandise, receiving and paying money for or on account of said firm, and the right to draw checks in the name of said firm. All of the property, as well as the transactions and accounts of said firm, shall be kept in regular books at the place of business of said firm in Boston, and shall be open at all times for the inspection of either party or their legal representatives."

After certain provisions not material, the agreement continued as follows:

" Upon the termination of said partnership by limitation, said John A. Webster will sell to said Herbert E. Webster, Frank E. Baker and Lewis O. Stoker, jointly, or to such of them as then survive, the property and assets of said firm, after the determination and payment of the profits thereof, upon the receipt of a sum equal to the value of such property and assets as it appears by the books of the firm, provided said Herbert E. Webster, Frank E. Baker, and Lewis O. Stoker, or such of them as then survive, have given notice in writing to said John A. Webster at least three months prior to the termination of said copartnership by limitation that they intend to avail themselves of the right to purchase said business as above provided. If either the said Herbert E. Webster, Frank E. Baker, or Lewis O. Stoker shall decline to join in the purchase of the copartnership property, then and in that event said John A. Webster will sell to such one or more of the said partners as may signify in the manner aforesaid their desire to purchase the property and assets of the firm on the same terms and conditions as above specified: and in case of their failure to give such notice, or if upon the termination of said copartnership any such notice has been given and they are unable to pay the value of said property and assets,

as appears by the books of the firm, in cash, or in security satisfactory to said John A. Webster, then their rights hereinunder, so far as relate to the purchase of said property and assets, shall cease and determine. In case of the death of John A. Webster before the termination of said copartnership by limitation, said copartnership shall be thereby determined, an account shall be taken, and any sums found due either of the other partners on account of his share of the profits hereunder, shall be paid to him, and such payment shall be in full settlement and satisfaction of all the interest of either of said partners in and to the property, assets and good will of said firm. In case of the death of either Herbert E. Webster, Frank E. Baker, or Lewis O. Stoker, before the expiration of said copartnership by limitation, there shall be paid to the representatives of such deceased, the share of the profits to which he is then entitled hereunder: and thereafter the share of the profits which would otherwise have been paid to such deceased, if living, shall be paid to said John A. Webster. Any payment to the representatives of either of said three partners as aforesaid, shall be in full settlement and satisfaction of all the interest of said deceased or his estate in the property and assets of said firm. In witness whereof the parties aforesaid have hereunto set their hands this day and year first above written." Here followed the signatures of the four partners.

The bill alleged that after the expiration of the term of the partnership the plaintiffs Herbert E. Webster, Baker and Stoker purchased from the defendant the property and assets, and good will and accounts, of the firm of John A. Webster and Company, which the defendant conveyed to them by the following instrument:

"Know all men by these presents that I, John A. Webster of Boston in the County of Suffolk and Commonwealth of Massachusetts, in consideration of the sum of forty-four thousand, four hundred and twenty-six dollars and five cents ($44,426.05) to me in hand paid by Herbert E. Webster and Frank E. Baker both of Lowell in the County of Middlesex and said Commonwealth, and Lewis O. Stocker of Saugus in the County of Essex and said Commonwealth, the receipt whereof is hereby acknowledged, do hereby grant, sell, transfer and deliver unto the said

Herbert E. Webster, Frank E. Baker and Lewis O. Stocker, the property and assets belonging to the firm of John A. Webster & Co., the goods and accounts being shown on the inventory and appraisal as made by the receiver and appraisers appointed by the court in the equity case, in which said grantees are the complainants, and said grantor is the respondent, No. 760 and pending in the Superior Court for Middlesex County, meaning and intending hereby to carry out the agreement between the parties hereto, dated April 1st, 1898, reserving herefrom the debts due said firm, and which have been classed as doubtful, and appear upon the dead ledger of said firm, which said doubtful debts are to be collected by the grantees hereto, and an account had between the said grantees and grantor once in every three months; one-half of the sum that shall be collected of said doubtful debts shall be paid to said John A. Webster; and the other half of said doubtful debts shall belong to and be the property of the said grantees. All bills that have been contracted for goods since April 6th, 1900, and the date hereof by said John A. Webster, are hereby assumed and are to be paid by the grantees; and all accounts from the sale of goods between said dates, are to belong to and be the property of said grantees. To have and to hold all and singular the said goods and chattels to the said Herbert E. Webster, Frank E. Baker and Lewis O. Stocker and their executors, administrators and assigns for their own use and behoof forever. And I hereby covenant with the grantees that I am the lawful owner of the said goods, chattels and accounts, excepting the rights that the said grantees have in the same and any claim that may exist for and on account of warranties or contracts heretofore made; that they are free from all incumbrances, excepting as aforesaid; that I have good right to sell the same as aforesaid, and that I will warrant and defend the same against the lawful claims and demands of all persons, excepting as aforesaid. In witness whereof, I, the said John A. Webster, hereunto set my hand and seal this fifth day of May in the year one thousand nine hundred. John A. Webster (Seal)."

The bill as amended alleged, that the defendant, individually, or in connection with the firm of John A. Webster and Son, of which he was a member, had sent, and from time to time con-

tinued to send, salesmen among the former customers of the firm of John A. Webster and Company, about Boston and in various places throughout the New England States and the State of New York, and by these salesmen, and by letters, directly solicited trade from the former customers of the firm of John A. Webster and Company, and had thereby obtained, and as the plaintiffs believed continued to obtain, trade from those customers, and thereby unlawfully interfered between those customers and the plaintiffs.

The defendant demurred to the amended bill. The case was heard by *Hardy*, J., who made a decree sustaining the demurrer and dismissing the bill; and the plaintiffs appealed.

*W. L. Harris*, for the plaintiffs.

*J. M. Lesser*, for the defendant.

KNOWLTON, J. The decision of this case depends on the construction to be put upon the sale that was made under that part of the articles of copartnership which provides for a conveyance of the partnership property by the defendant to the plaintiffs on the termination of the partnership by its own limitation. It is contended by the plaintiffs that the defendant has sold to them the good will of the firm and that a solicitation of trade by him from former customers of the firm is an unlawful interference with their rights of property.

The decisions in different jurisdictions touching the rights of the vendor and of the purchaser resulting from the sale of a business with the good will belonging to it, are somewhat in conflict. In England the rule now established seems to be that on a sale of a general mercantile business with the good will belonging to it, the vendor is not precluded from establishing a new business of the same kind, which may come in competition with that which he sold, so long as his efforts are not directed against those activities and projects which, in a sense, may be said to belong to the business for which he has been paid. In a late case (*Trego* v. *Hunt*, [1896] A. C. 7), it was held, overruling *Pearson* v. *Pearson*, 27 Ch. D. 145, that a copartner about to leave a firm under a previous arrangement that the good will should belong to his copartners who remain, had impliedly agreed to do nothing to deprive the others of the benefit of the good will, and that taking the names of the customers of the

firm from the books, with an avowed purpose to solicit their trade for a new business of the same kind which he was about to establish, called for an injunction against such solicitation. At the same time, his right to establish a new business in competition with the other, so long as he did not attempt direct interference with the customers of the firm, or with the particular business then being done by it, was recognized. The decisions in America are far from uniform. The cases of *Cottrell* v. *Babcock Printing Press Manuf. Co.* 54 Conn. 122, *Williams* v. *Farrand*, 88 Mich. 473, *Ward* v. *Ward*, 15 N. Y. Supp. 913, *Close* v. *Flesher*, 8 Misc. (N. Y.) 299, and *Vonderbank* v. *Schmidt*, 44 La. An. 264, tend to show that after having sold the good will of a firm, a former partner in it may endeavor to obtain trade of its old customers, not only by public advertisement, but also by direct and personal solicitation. Cases in New Jersey and in Ohio hold that such solicitation is in violation of his implied contract to do nothing directly to imperil the value of that which he has sold. *Newark Coal Co.* v. *Shangler*, 9 Dick. 354. *Burckhardt* v. *Burckhardt*, 36 Ohio St. 261.

Looking at the reasons that underlie the different decisions, the principal practical questions to be determined in such cases are, What is the nature of the property that has been sold and what is the intention of the parties as manifested by their contract. The good will to which the contract relates may mean more or less, according to the nature of the business and the relations of the parties. In this Commonwealth it was held in *Bassett* v. *Percival*, 5 Allen, 345, that a sale of the stock and good will of a grocery store in Boston did not impose any personal restraint on the vendor, nor restrict his right to transact a similar business in another place at a subsequent time. In the report of this case it does not appear that there was any personal solicitation of former customers, although the new store was very near the old one.

In *Angier* v. *Webber*, 14 Allen, 211, the business whose good will was sold was that of carriers between Boston and Somerville, who occupied stands in certain streets, and whose business was done with their customers at their houses and shops and on the streets. It was held that the establishment of a new carrying business over the same route was a direct interference

with the good will of that which had been sold. It was a quite different act from opening a rival shop on the same street in a large city like Boston. The same principle was applied in *Dwight* v. *Hamilton*, 113 Mass. 175, when the defendant's "practice and good will as a physician" was sold, and in *Munsey* v. *Butterfield*, 133 Mass. 492, when the good will of a milk route was sold. In *Hoxie* v. *Chaney*, 143 Mass. 592, the subject of the sale was the good will of a manufacturing business, and it was held that the case fell within the rule in *Bassett* v. *Percival, ubi supra*. The effect of personal solicitation of former customers by the proprietor of a new business, who has sold the good will of his previous business, when the former business was of such a kind that the sale would not preclude him from establishing a competing business, has not been determined by this court, and we do not find it necessary to determine it in this case. See *Holbrook* v. *Nesbitt*, 163 Mass. 120.

Looking at the articles of co-partnership we find a provision for a sale of the property and assets of the firm upon the termination of the partnership, at the value of the "property and assets as it appears by the books of the firm." This sale was to be made by the defendant who furnished all the capital, and who would own the property after a division of the profits. It was to be made to these plaintiffs or to such of them as might wish to purchase. If they should fail to give notice of their desire to purchase, their rights were to cease and determine. In this provision there is no reference to good will. The price to be paid includes nothing for good will. On the other hand, in the provision in reference to a settlement upon the death of a partner before the end of the term, there is an express reference to good will.

The contract of sale, which follows the articles, makes no reference to good will, but purports to be a sale of goods and chattels at a valuation shown by the books. The parties provided for a disposition of the property, not of a continuing partnership, but of a partnership whose term has come to an end. Of the kind of good will that is dependent on the continuance of the firm name, or of an identified proprietorship or management, it is plain that the plaintiffs by their purchase acquired nothing. They could not continue the use of the defendant's

name or of the firm name.    Whether there was any good will in reference to the place, depends upon a question about which the record shows nothing, namely, the question whether the firm, at the time of the sale, owned rights in the place where its business had been conducted.    The bill fails to show any good will of this kind that would pass as incident to a sale of the property. If there was anything of good will that pertained to the ownership of the goods and assets of the firm, certainly no good will pertaining to the personality of its members was kept alive or conveyed by the contract of sale.    We think that the parties must be deemed to have understood that, the partnership having come to an end by its own limitation, they were all at liberty to do any kind of business, and to gain such advantages as they could from their relations to the former business.    This was not a sale of good will beyond that, if any, which pertained to the ownership of the goods.    The contract makes no reference to the continuance of the business.    If the plaintiffs by their purchase, gained advantages in reference to the business which they wished to do under the new firm name, these were not obtained by any transfer from the defendant of rights in a continuing business ; but only by a transfer of his rights in property, which did not include a right to continue the existing business without change.

*Decree affirmed.*