CARRIE E. HUTCHINSON, administratrix, *vs.* IRA A. NAY.

Suffolk.    January 21, 1903. — May 22, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Partnership*, Good will.

Whether the administrator of a deceased partner has a right to have the good will of the partnership put up for sale in this Commonwealth as in England, *quære.*

If after the death of one of two partners engaged in the teaming business the survivor carries on the business on his own account and in his own name and solicits business from the customers of the old firm, he is not liable to account to the administrator of his deceased partner for the value of the good will.

BILL IN EQUITY, filed June 25, 1901, by the administratrix of the estate of Joseph I. Hutchinson for an accounting from

the defendant as surviving partner of the late firm of Ira A. Nay and Company, which consisted of the defendant and the plaintiff's intestate.

The Superior Court made a decree confirming a master's report, except as to the computation of certain interest corrected by agreement, overruling the plaintiff's and the defendant's exceptions to the master's report, and ordering that the defendant pay the plaintiff the sum of $623.11 and costs. The plaintiff appealed.

*W. P. Hale,* (*F. P. Carr* with him,) for the plaintiff.

*F. N. Nay,* for the defendant.

LORING, J. This case comes up on an appeal by the plaintiff from a final decree overruling all exceptions taken by her to the report of a master.

The material facts set forth in the master's report are that prior to the death of the plaintiff's intestate he had been for over thirty-six years in partnership with the defendant, in the teaming business in Boston. The business done by the partnership was principally as teamsters for wholesale dealers in shoes and leather, and was carried on at two stands, one on Pearl Street in charge of the defendant, the other on Federal Street in charge of the intestate. Neither drove a wagon, and it was necessary that each should remain at his stand nearly all the time, to receive orders for carting for customers, and to direct the work of the drivers of the carts. The custom depended to a very great extent upon the personal relations between the partners and their customers. Hutchinson, the intestate, died on January 31, 1901. A few days after his death the defendant told the plaintiff, who was Hutchinson's daughter, and her mother, Hutchinson's widow, that he intended to continue in the teaming business, and that he wished to buy their interest in the late firm, but he made no express reference to good will, and it is expressly found by the master " that he never assumed nor purchased, nor agreed to assume nor to purchase, such good will, unless that result follows as a matter of law from the other facts herein found."

Since Hutchinson's death, Nay has carried on the teaming business on his own behalf, in the same places and with the property of the late firm and for its customers, using the old

firm books. He struck off the words "& Co." from the bill heads about February 1, 1901. On June 22, 1901, the plaintiff sold to the defendant "all of Hutchinson's interest in the firm and chattels except the good will and outstanding accounts," and immediately after the defendant had the words "& Co." painted off from the carts.

After stating these facts, the master's report, so far as material, is as follows: " There was no evidence of any request or demand of the plaintiff to the defendant that the defendant should offer the chattels or good will for sale, but from a few days after Hutchinson's death down to June 22, 1901, the date of the plaintiff's bill of sale, the parties were negotiating for a settlement, and the only dispute (aside from accounting) was as to the amount which the defendant should pay for the Hutchinson interest. If Nay had not continued the business after the death of Hutchinson, the business would have been dissipated at once, and would have had no value beyond the value of the chattels used therein. Nay has acted honestly in his dealings with the plaintiff."

This bill was filed on June 25, 1901, by the plaintiff as administratrix of the estate of Hutchinson, for an accounting as to the outstanding accounts on which the parties had not been able to agree, and for the purpose of charging the defendant with the value of Hutchinson's interest in the good will of the business.

The defendant submitted to the decree made by the Superior Court on the master's report, and the case is here on an appeal by the plaintiff from the decree overruling all her exceptions to it.

Her main contention is that the defendant must account to her for her intestate's share of the value of the good will of the partnership. There was nothing in the copartnership articles as to the good will of the business on the death of either partner, nor was there any article in the copartnership agreement restraining the survivor from conducting the same business with the customers of the old firm.

The master has found that the defendant did not agree to buy the good will. That is decisive of the question before us.

If the plaintiff is entitled to anything in the matter of the good will of the late firm, it was to have the good will put up

for sale on Hutchinson's death. Whether she had that right is not settled in this Commonwealth, although it is settled that she would have had that right had the question arisen in England. *In re David*, [1899] 1 Ch. 378, 382. Lindl. Part. (6th ed.) 445. What is not settled in England is the basis on which such a sale will be conducted so far as the right of the survivor to carry on a competing trade and to solicit business from the customers of the old firm is concerned. It is settled in England that the surviving partner who does not buy the good will can set up a competing business. *Johnson* v. *Helleley*, 2 De G., J. & S. 446. *Hall* v. *Barrows*, 4 De G., J. & S. 150. But in England one who voluntarily sells the good will of his business can always do that. Lindl. Part. (6th ed.) 442. What such a person cannot do in England is to solicit business from customers of the old firm, because that would derogate from his grant. *Trego* v. *Hunt*, [1896] A. C. 7. *Gillingham* v. *Beddow*, [1900] 2 Ch. 242. In Massachusetts a person who sells the good will of his business cannot set up a competing business if doing so would derogate from his grant; the cases are collected and reviewed in *Webster* v. *Webster*, 180 Mass. 310. It was held in England in *Walker* v. *Mottram*, 19 Ch. D. 355, affirming *Cruttwell* v. *Lye*, 17 Ves. 335, that after the sale of the good will of the business of a bankrupt the bankrupt who did not purchase it not only could set up a competing business but could solicit business from customers of the old firm. See also *Trego* v. *Hunt*, [1896] A. C. 7, 19, 23; but see *In re David*, [1899] 1 Ch. 378. The only case in this Commonwealth on the rights of partners in the matter of good will on the termination of a partnership is *Webster* v. *Webster*, 180 Mass. 310. But that case does not touch the question before us.

In the case at bar the plaintiff is not seeking to have the good will sold. What she is seeking is to have the defendant account for the value of it. The master has found that the defendant did not in fact agree to buy the good will. But the plaintiff contends that as matter of law the defendant must be taken to have agreed to buy it on the facts found. She bases this contention on the fact that he has enjoyed the benefit of the good will since Hutchinson's death. In the first place that is not so. Nay struck off the words " & Co." from his bill heads

immediately after Hutchinson's death; he kept those words on the carts so long as they were the property of the firm but he struck those words off them as soon as they became his. In the second place, if he had enjoyed the benefit of the good will, it was because the plaintiff did not assert her right to have it sold. There is nothing to indicate that he impliedly agreed to buy the good will. He did nothing more than assert his right to carry on business on his own account, and in that connection to solicit business from the customers of the old firm. His right to do that, even after a sale of the good will, is an open question in this court, and we cannot hold that his asserting the right where no sale has taken place is *per se* an agreement to buy and pay for the good will. Under these circumstances, there is no liability on him to account for the value of the good will.

Exceptions 4, 5, 8 and 19 are to the refusal of the master to report the evidence on particular points, and exceptions 16 and 27 are to his refusal to report all the evidence before him. By the terms of the order appointing the master, he had no authority to report evidence.

Exceptions 1, 9, 10, 11, 12, 13, 14, 21 and 23 are immaterial under the view of the case which we have taken.

Exceptions 2, 3, 6, 7, 15, 17, 18, 19, 25 and 27 are to findings on the ground that they are not warranted or required by the evidence. The evidence is not before us, and these exceptions must be overruled.

Exception 20 is to the exclusion of a letter of the plaintiff's attorney offering a compromise. It was properly excluded as a self serving statement and as an offer of compromise.

On the facts found by the master, the following exceptions are as matter of law wrong, namely, exceptions 22, 24 and 26.

*Decree affirmed.*