FRANK E. GRIFFITH vs. THOMAS KIRLEY & others (afterwards JAMES E. KIRLEY & another, administrators, & others).

Hampden.    September 26, 1905. — November 29, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Partnership.    Good Will.    Equity Pleading and Practice.*

Where one partner of a firm to which a good will is attached has taken exclusive possession of the partnership property and is carrying on the business as if he were the purchaser of it, in a suit by one of his partners for an accounting he may be charged with the value of the good will.

A firm carrying on a butchering business and dealing in tallow, bones, grease and hides, on real estate used as a farm and fertilizer factory which has become in equity partnership property, has a good will attached to the real estate and fixtures which any of the partners on the winding up of the partnership has the right to have sold, so that the partnership may obtain the benefit of it, but such sale conveys no exclusive right to solicit trade from former customers of the old firm, and leaves the members of the old firm as free to enter a competing business and to solicit trade as though the partnership never had existed.

In a suit in equity for an accounting between partners, if a master's report contains a finding for the plaintiff as to the amount of tangible property for which the defendant should account but makes no finding upon the value of the good will, for which the defendant also was liable to account, and does not report the evidence upon that subject, and if a judge hears the case upon the master's report including the " evidence reported therein " and it does not appear that any other evidence was introduced before him, and if the judge finds for the plaintiff in a sum larger than that found by the master, including the good will, and there is no way of ascertaining what part of this sum is for the good will and what part is for the tangible property, there must be a further hearing to determine the value of the good will, as to which it does not appear that the parties ever have been heard.

BILL IN EQUITY, filed in April, 1902, by Frank E. Griffith of Chicopee against Thomas Kirley of South Hadley and Richard E. Griffith of Chicopee, for an accounting between the partners of the firm of Thomas Kirley and Company, consisting of the plaintiff and the defendants, who carried on in Chicopee the business of butchering, farming and the making of fertilizers. By amendment Martin L. Barnes, to whom Kirley conveyed the property of the firm as stated in the opinion, was made a defendant.

In the Superior Court the case was referred to John W. Mason, Esquire, as special master.

Later the case was heard by the court upon the master's report, and a decree was made containing the following findings:

"This case came on to be heard upon the master's report and upon hearing the arguments of counsel and full examination of the master's report and considering the findings and evidence reported therein, it is found that the value of the real estate, tools, and machinery, not turned over to the receiver and retained by Kirley, together with the good will of the business, that is, the plant, etc., as a going concern, was $11,000 in lieu of $6,000 as found by the master. And that Kirley in the account between him and the Griffiths should be charged with that amount. With the above modifications the rulings and findings of the master are adopted. It is found that there is a balance of $1,031.67 in the hands of the receiver to be distributed.

"It is found that at the time of the termination of the partnership, to wit, May 5, 1902, there was due from the partnership to Richard Griffith the sum of $1,591.61 and to Frank Griffith the sum of $1,777.44 and that there was due from said Kirley after all credits given him, the sum of $2,337.38, which together with the balance in the hands of the receiver aggregates the amount due the two Griffiths as their share of the partnership estate."

Here followed the orders of the decree.

James E. Kirley and Charles N. Webster, administrators of the estate of Thomas Kirley, who on the suggestion of the death of that defendant had been admitted to defend the suit, appealed from the decree.

*R. O. Dwight,* for the administrators.

*A. L. Green & F. L. Bennett,* for Frank E. Griffith and Richard E. Griffith.

HAMMOND, J. 1. The main question is whether the estate of Kirley who has died since the beginning of this suit should be charged with the value of the good will of the partnership business. The master has found that he should be thus charged unless by operation of law the good will passed to the receiver. It seems plain from the report of the master and the evidence of the receiver that the receiver did not undertake to do anything with the real estate. He simply took possession of some of the personal property. He does not seem to have had any

authority to deal with the real estate. He therefore could make no sale of the firm property as a going concern. The good will was apparently not attached to that portion of the personal property of which the receiver took possession.

Upon the question whether Kirley should be charged with the value of the good will the master finds the following facts:

" It appeared that in 1895 the plaintiff, Frank E. Griffith, and his brother, the defendant Richard E. Griffith, agreed with the defendant Thomas Kirley, to enter into a partnership. The defendant Kirley then owned certain real estate in Chicopee, used as a farm and a fertilizer factory, and there he carried on also a butchering business and dealt in tallow, bones, grease, and hides. It was agreed that the said Frank E. Griffith and Richard E. Griffith should pay $5,000 to said Kirley for a half interest in the real and personal property used in the above mentioned business and the good will of the business. This five thousand dollars was payable, one thousand dollars in cash, and the balance · in annual instalments of one thousand dollars with interest. By the terms of this agreement, which was wholly oral, the defendant Kirley was to receive one half of the profits of the business, and the plaintiff, Frank E. Griffith, and the defendant, Richard E. Griffith, were each to receive one fourth. To make this division equitable, as the Griffiths were putting in the time of two men and Kirley only his own time, it was agreed that the Griffiths should be allowed wages for Frank E. Griffith's services, and that the services of Richard E. Griffith should offset the services of Kirley. The business was to be carried on under the name of Thomas Kirley & Co.

" The one thousand dollars, as above agreed, was paid by the Griffiths, five hundred dollars in cash October 7, 1895, and the balance in a note, dated October 26, 1895, which was subsequently paid by them, with interest. Some six months after the beginning of the partnership, a bond for a deed was given by Kirley to Richard E. and Frank E. Griffith, in which he bound himself to convey to them one undivided half interest ·in the real estate, above mentioned, upon the payment of five thousand dollars, as above set forth, and at the same time R. E. Griffith and F. E. Griffith signed a promissory note for five thousand

dollars, 'payable one thousand dollars each and every year until the whole sum is paid, with interest, payable annually.' A payment of one thousand dollars was indorsed upon the note as of the time of its date. . . .

"I find that this bond for a deed and this note were parts of one transaction, but that they did not purport to state all the terms of the agreement between the parties, and that the consideration for the five thousand dollar note included a half interest in the personal property and the good will of the business, and that the bond and note were with this intention dated back to the time of the beginning of the partnership.

"The partnership began September 1st, 1895, and continued until May 5th, 1902, when it was terminated by the acts of Kirley, who made a deed of the real estate and a bill of sale of the personal property of the firm to the defendant, Martin L. Barnes. Barnes immediately took possession of the real and personal property and ejected the Griffiths from the real estate. Thereupon the bill of complaint in this suit was brought, and a receiver was appointed, who took possession of the partnership property, as pointed out by the defendant Kirley. The receiver has sold this property, collected the bills due the partnership, and paid its debts, and has a balance in his hands to be divided between the partners in accordance with the decree of the court in this case. Said deed and bill of sale from Kirley to Barnes were without consideration. Said Barnes was merely a secret agent of Thomas Kirley, and Kirley kept on uninterruptedly with the business formerly of the firm, and the business was not interrupted by the receivership, as Kirley purchased the personal property of the firm from the receiver."

In the final adjustment of the accounts the master has charged the Griffiths with the balance due upon the $5,000 note. Although the title to the real estate was in Kirley, yet the master rightly ruled that in equity it should be regarded as partnership property.

Here, then, is a case where the original proprietor of the business has sold one half of all the property used therein, including the good will, to two persons, as a part of an agreement to carry on the business as partners. The business is then carried on by them for several years, when the original proprietor dissolves the

partnership by a pretended sale of the real and personal estate belonging to the firm to a secret agent through whom without interruption he carries on the business for himself alone at the same place, excluding his former partners from any participation therein.

It is plain from the facts found by the master that a connection had been established between the firm and its customers, of such a nature as to lead to the probability that at least some of the old customers would continue to trade with the successor of the firm; and, the nature of the business being such as to render the procurement of a proper site a matter of some difficulty, it fairly may be inferred that the chance of maintaining this connection, as well as of acquiring new customers, depended to a considerable extent upon the possession of the real estate and fixtures of the old firm. In other words, it is manifest that there was a good will, and that it was attached to the real estate and fixtures. See *Moore* v. *Rawson*, 185 Mass. 264.

It is unnecessary to cite authorities in support of the proposition that upon a bill to wind up the affairs of a partnership it is the right of either of the partners to have the property sold so as to obtain the benefit of the sale of the good will. In the case before us the defendant, as before stated, has taken exclusive possession of the firm property to which the good will is attached, and is carrying on the business exactly as though he were the purchaser of it. Under these circumstances the court may regard the defendant, so far as respects the good will, as though he had purchased under an order of the court for the sale of the property and good will, and therefore that he should be charged with the value of the good will.

It is well, however, to see what is the nature of this good will. The law upon this subject has been recently discussed by this court in *Hutchinson* v. *Nay*, 183 Mass. 355, and 187 Mass. 262; and we do not deem it necessary to do much more than to refer to that case and the cases therein cited. It is sufficient to say that where the sale of partnership property is made not by the owner of the property but by a decree of the court, the general rule is that there is no implied covenant on the part of either partner that he will not solicit trade from the former customers of the firm, but on the contrary either of the members of the old

firm stands with reference to a purchaser at such a sale as though the partnership had never existed.  As stated by Loring, J. in *Hutchinson* v. *Nay*, 187 Mass. 262, 266, such a sale " is to be conducted on the footing that [either] partner is at liberty to enter on a competing business and to solicit trade from the customers of the old firm."  There is no covenant express or implied upon the part of either partner.  Under such a sale the good will which has been sold " is nothing more than the probability, that the old customers will resort to the old place." Lord Eldon, in *Cruttwell* v. *Lye*, 17 Ves. 335, 346.  To hold otherwise would be to hamper a man in his future action as to his lawful business in a matter in which he has made no covenant, and would be wholly unreasonable.  See a good collection of the cases in a monographic note found in 96 Am. St. Rep. p. 610, *et seq.*

2.  Several exceptions were taken by the plaintiff to the master's report.  All are now immaterial except the seventh, in which the plaintiff complains that although the master found that " Kirley shall stand charged with the good will of the business ' unless the good will passed by operation of law to the receiver,' " he has not valued the good will or otherwise debited the same to Kirley or credited the same to the plaintiff, the plaintiff insisting that the good will did not pass to the receiver and that Kirley was chargeable therefor.

The case was heard upon the master's report including the evidence therein stated, and the judge found thereon that " the value of the real estate, tools and machinery, not turned over to the receiver and retained by Kirley, together with the good will of the business, that is the plant, etc., as a going concern, was eleven thousand dollars in lieu of six thousand dollars, as found by the master."  With this modification the rulings and findings of the master were adopted.  Upon recurring to the master's report it will be seen that the sum of $6,000 named in the decree was the valuation by him of the " real estate, tools and machinery, not turned over to the receiver," and did not include the value of the good will.  The decree therefore shows that the judge found that the good will did not pass to the receiver, and that, as contended by the plaintiff in his seventh exception, Kirley should be charged with it.  Having gone so

far, the judge proceeded upon the facts and evidence reported by the master to find the value of the plant including the good will, and came to the conclusion that it amounted to the sum of $11,000. It does not appear whether or not this increase of $5,000 was due solely to the valuation of the good will.

It is strongly contended by the appellants, the administrators of the estate of Kirley, that the judge upon the hearing could not properly pass upon this question of value, and that in any event the evidence does not warrant the finding of so large a sum.

The case was sent to the master " to hear the parties, to examine their vouchers and evidence, and make report of the facts thereof and such portions of the evidence as either of the parties to said case may request" to the court. The master reports certain findings and the evidence bearing upon some of them, but he has made no finding upon the value of the good will; and, while some of the evidence reported by him may be material upon that question, still it is not reported for that purpose; and it does not appear what, if any, evidence was before him upon that question. The decree recites that the case was heard by the judge upon the master's report including the " evidence reported therein." The master not having made any finding upon the question of the value of the good will, and not having reported the evidence upon that subject, it is plain that the judge could not pass properly upon that question as the case then stood. It does not appear that the parties ever have been heard upon that question. The sum of $11,000 found by the judge includes the good will, but inasmuch as there is no way of ascertaining what part of this sum is for the good will and what part is for the tangible property, the decree should be reversed as to that part which states the valuation of the property and good will to be $11,000 and states the account upon that theory, and the parties are to be further heard, either by the master or by the court, as may seem best to the court as to the value of the good will. The value of the tangible property may be settled by the testimony already reported by the master.

*So ordered.*