## JAMES T. MOORE *vs.* DANIEL G. RAWSON & others.

Suffolk.     June 16, 1908. — September 15, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Partnership.   Good Will.   Sale.   Equity Jurisdiction,* For an accounting.

Statement by KNOWLTON, C. J., of the effect of the sale of the good will of a partnership under a decree of court where the affairs of the partnership are wound·up by reason of the death or bankruptcy of one or all the partners as distinguished from the effect of a voluntary sale of an interest in a business including the good will, the character of the good will for which the defendants in the present case were liable to account to the plaintiff being the same as if they had acquired it at a sale under a judicial decree.

The purchaser of the good will of a partnership sold under a judicial decree acquires the right to use the firm name for the purpose of designating the business carried on by him as a continuation of that done by the old firm, but the exercise of this right is subject to the limitations necessary to protect the rights of the former partners of the old firm, such as that expressed in R. L. c. 72, § 5, and the purchaser has no right to use the name of the old firm in such a way as to indicate that the business is being conducted at that time by persons who have no connection with it. Each member of the old firm has the right to use his own name in a new business, either alone or with the names of others who are associated with him, but only the purchaser lawfully can use the firm name as an indication that his business is a continuation of that of the old firm.

R. L. c. 72, § 5, providing that " a person who carries on business in this Commonwealth shall not assume or continue to use in his business the name of a person formerly connected with him in partnership or the name of any other person, either alone or in connection with his own or any other name or designation, without the consent in writing of such person or of his legal representatives," does not interfere with the right of a purchaser of the good will of a partnership sold under a judicial decree to advertise as the successor to the former firm.

In a suit in equity by one of the partners of a dissolved firm against his former copartners for an accounting, if it appears that on the termination of the partnership the defendants wrongfully appropriated to their own use the whole property of the partnership including the good will and continued to carry on the same business using the firm name without change, the plaintiff's right to an accounting for his share of the good will is not affected by the fact that, if the good will of the old firm, including the right to use the firm name to show succession, had been sold to other persons, the defendants might have used the same name to designate a new firm.

A purchaser, at a sale under a judicial decree, of the assets of a partnership, including a list of customers of the firm, and of the good will of the business, acquires the right to use the list as a means of increasing his business, and the partners of the old firm, although they may establish a competing business, have no right to compel the purchaser to furnish them a list of the customers of the old firm or to submit such a list for their examination.

In a suit in equity by one of the partners ·of a dissolved firm against his former

copartners for an accounting, if it appears that on the termination of the partnership the defendants wrongfully appropriated to their own use the whole property of the partnership including the good will and continued to carry on the business as their own, and if among the assets of the firm taken into possession by the defendants there was a list of the customers of the firm, the defendants are bound to account to the plaintiff for the use of this list and the enjoyment of business derived from its use.

By a dissolution under the terms of a partnership agreement one of the partners was forced by the other partners to retire, and the remaining partners refused the retiring partner an accounting, and, forming a new partnership in which they took an additional partner into the firm, continued the business, using the retired partner's share in the property and good will of the old firm as a part of their working capital. In a suit by the retired partner against his former copartners for an accounting, this court held that the defendants must account to the retired partner, not only for his share of the partnership property including the good will, but also for his share in all the actual profits derived from the property, or must pay him interest on his share of the capital, if he should so elect. In ordering that the case should be recommitted to the master, this court intimated that, in computing the actual profits in which the plaintiff was entitled to share, such a sum might be deducted from the net profits as the master should find was attributable solely to the skill and services of the defendants. The plaintiff elected to take his share of the profits instead of interest on his money. The master, to whom the case was recommitted, reported that the evidence did not enable him to determine how much, if anything, should be allowed to the defendants as compensation for their services. *Held*, that, on all the facts of the case, the culpability of the defendants was not so great as to leave them with no right to compensation for their services, and that they equitably were entitled to an allowance, that, although the evidence did not give a precise standard for the measurement of the value of the defendants' services, it showed that something should be allowed to them, and that it was the duty of the master to determine what was a reasonable compensation, that, by fixing a fair price for such services in ordinary cases, it would be possible to determine whether, in view of the results of the business, more or less than the usual compensation should be allowed as the part of the income that ought to be attributed to the services of the partners as distinguished from the part which was earned by the capital of the partnership, and that for this purpose the services of the new partner should be treated as if rendered by the defendants. It was ordered that the case again should be recommitted to the master to determine what allowance should be made to the defendants for their skill and services and to state the account accordingly.

BILL IN EQUITY filed in the Supreme Judicial Court on March 14, 1872, by a former partner of the firm of D. G. Rawson and Company, engaged in manufacturing boots and shoes in Worcester and selling them at a store on Pearl Street in Boston, who on December 20, 1871, had been forced out of the firm by his copartners under a dissolution of the partnership in accordance with a provision of the articles of copartnership, for an accounting.

A summary of the history of this case, which was begun more than thirty-six years ago, will be found in the opinion of *Braley,* J., at pages 268, 273, 274 and 275 in the report of the case in 185 Mass. 264. The following statement of some of the facts in the case is taken from the same opinion :

" After the dissolution by the enforced withdrawal of Moore, no change was made, but the defendants continued the business as before, until December 31, 1872, when a new partnership was formed, consisting of four persons ; three of whom were the re-tiring partners of the old firm and the defendants in this case. No change, however, was then made either in the firm name, which continued to be that of ' D. G. Rawson & Co.,' or in the place where the business was located, and the defendants took over the assets of the old firm, not for the purpose of liquida-tion, but for use in their business. And the customers who had patronized the first, continued to trade with them and the second partnership.

" The plaintiff retired, not only from the firm, but also from the business that it carried on, while the defendants retained the old place of business, and conducted it under the old firm name.

" In other words, no change apparent or real was made in an enterprise which was transferred bodily from the old partner-ship to the new, except that one partner was obliged to retire under the terms of the old contract, and after a short period, by a new agreement, another was taken in his place."

" As the trial proceeded before the different masters, at some stage of the proceedings it appeared that the defendants had used the share of the plaintiff, including not only the first amount found by the master, but that amount increased by the value of his interest in the good will in their business, . . . "

" When the plaintiff demanded an accounting, and that his share of the assets should be ascertained and paid to him, the demand was met with a denial of such a right, and a refusal to grant his request. He wâs obliged to resort to a bill in equity to compel the defendants to do what by implication under their contract, which contained no provisions for a settlement of the partnership on its termination, they had agreed to perform upon a dissolution of the firm at their option ; and after which, with

the plaintiff's assent, they became bound within a reasonable time to wind up and settle the affairs of the partnership, and pay him his proportionate part.

" No pretense was made by them that in good faith they had taken the partnership property at a fair valuation, and were ready to state the account on that basis, but they refused to pay anything, absolutely ignored him, and treated the property as their own."

It was held that the defendants must account to the plaintiff for his share of the good will as well as in all the other assets which they took over for use in their own business, and also for his share in all actual profits derived from the property, or must pay him interest on his share of the capital, if he should so elect. It also was held that the court in its discretion might allow the defendants in accounting for the actual profits to deduct from the net profits such a sum as should be found to be attributable solely to their skill and services in conducting the business. It was ordered that the case should be recommitted to the master to make the necessary computations and findings, and state the result in a final report.

On January 3, 1908, the case came on to be heard, upon the master's second report and the exceptions thereto, before *Morton*, J., who, by agreement of the counsel for the parties, reserved and reported it for determination by the full court, such decree to be entered as justice and equity might require.

The case was submitted on briefs.

*G. R. Swasey & W. P. Thompson*, for the plaintiff.

*J. B. Warner*, for the defendants.

KNOWLTON, C. J.    The fundamental fact that the defendants are bound to account to the plaintiff for the good will of the partnership business was established when this case was formerly before this court. *Moore* v. *Rawson*, 185 Mass. 264. It was said that " the attitude of the defendants, up to the time of the payment of the money into court, was evidently that of a general denial of any right of the plaintiff to an accounting." It was held that the plaintiff's demand of his share in the assets of the firm, taken in connection with the other facts and circumstances of the case, was enough to entitle him to be paid for his interest in the good will, as well as in all the other assets which they took

over "not for the purpose of liquidation, but for use in their business." See also *Griffith* v. *Kirley*, 189 Mass. 522.

The first question of importance relates to the manner of estimating the value of the good will, and particularly its value in reference to the right to use the firm name. It is held, both in this State and in England, that a sale of the good will of a partnership, under a decree of the court, when the affairs of the partnership are wound up by reason of the death or bankruptcy of one or of all of the partners, carries with it everything of advantage belonging to the existing business relative to the continuance of it, but leaves the several members of the firm at liberty to start a new business of the same kind which will come into competition with the business of the purchaser. It is to be assumed that the members of the firm, or some of them, may desire to start such a business in the same neighborhood. One who voluntarily sells his interest in a business, together with the good will, impliedly agrees that his relations to the business are ended, and that all the advantages belonging to it as a going concern are to pass to the purchaser, and that he himself will not do anything to interfere directly with it as property having a good will which will be valuable to the purchaser. One selling in such a way puts himself in the attitude of retiring from business, so far as his activity would directly affect that which fairly might be considered as belonging to the business at the time of the sale and giving it value for his successor.

It is often a very difficult question to determine how far this implied agreement goes in its application to the facts of a particular case. Such questions were considered in *Webster* v. *Webster*, 180 Mass. 310, and in cases there cited. See also *Old Corner Book Store* v. *Upham*, 194 Mass. 101, 105, and *Foss* v. *Roby*, 195 Mass. 292. An answer to the question requires a consideration of what is fairly included in the good will, in view of the situation of the parties and the implications involved in the terms of the contract. Sometimes very little, if anything, is meant, beyond what is included in a sale of the good will under a judicial decree in settling the business of a partnership. But usually, in this Commonwealth, there is an implied agreement not to set up a competing business that will directly interfere with the business to be carried on by the purchaser of the good will. In England, a

competing business may be set up by the seller of the good will; but he is not permitted to solicit business from the customers of the old firm. See *Webster* v. *Webster, ubi supra; Hutchinson* v. *Nay,* 187 Mass. 262, and cases cited; *Foss* v. *Roby,* 195 Mass. 292.

In the present case the partnership was dissolved, and the good will owned by the members of the firm was such as might have been sold under a judicial decree if the business had been settled by a receiver. If there had been such a sale, either of the partners would have had a right afterward to establish a new business of the same kind, and to solicit trade from customers of the old firm. *Hutchinson* v. *Nay,* 187 Mass. 262. It is the good will that would have passed under such a sale for which the defendants are accountable in this suit.

The questions principally discussed relate to the right of a purchaser of the good will to use the firm name. The right to use the firm name, for the purpose of designating the business carried on by a purchaser as a continuation of that done by the old firm, passes with a sale of the good will. This is an exclusive right. The limitations upon its exercise are only such as are necessary to protect the rights of the partners or others. Such a limitation is expressed in R. L. c. 72, § 5. The purchaser has no right to use the name in such a way as to indicate that the business is then being conducted by persons who have no connection with it. Each member of the old firm, like everybody else, has a right to use his own name in a new business, either alone, or with the names of others who are associated with him. But after a sale of the good will, no one but the purchaser can lawfully use the firm name as an indication that his business is a continuation of that of the old firm. *Lothrop Publishing Co.* v. *Lothrop, Lee & Shepard Co.* 191 Mass. 353, 355. A convenient way of using the firm name by a purchaser of the good will, if rights of third persons are involved, is by advertising as the successor to the former firm. The statute permits this. *Martin* v. *Bowker,* 163 Mass. 461. See also *Hoxie* v. *Chaney,* 143 Mass. 592; *Sohier* v. *Johnson,* 111 Mass. 238. Such a use of the name implies that the business continued by the successor retains the valuable and attractive features which it possessed under the former proprietor. It implies that everything that

enters into the good will of the business continues in it, so far as it can in any business which is wound up by legal proceedings in the lifetime of the partners.

In fixing the value of the good will the master treated the right to an exclusive use of the firm name as included in the good will for the appropriation of which the defendants must account.  At the request of the defendants he also made certain alternative findings which we need not consider.  Upon the important point in issue he found, among other things, as follows: " If the good will had been sold at the time of dissolution, I apprehend that the purchaser could have lawfully announced that he had ' purchased the good.will of the business conducted for some years past and up to December 31, 1871, under the following name and style, namely: D. G. Rawson and Company', and further I apprehend that the purchaser could have done this, even if it be true, as the defendants contend, that under the statute, (R. L. c. 72, § 5,) the purchaser could not assume or continue to use in his business the name of D. G. Rawson without his consent in writing.  And further I apprehend that in the event of a sale as above, D. G. Rawson might establish a new business and do so under his own name; but that he could not lawfully hold himself out as the same D. G. Rawson and Company who had conducted the business of 1870 and 1871, or as the successor to the good will and business of that firm.  If he were to resume business, it would be a new business that he was starting, not an old business that he was carrying on or continuing.  That old business had been sold when the good will was sold.  Of course, he could announce that he, D. G. Rawson, was the same D. G. Rawson who had formerly been concerned in the business of 1870 and 1871."

It often happens, on the dissolution of a partnership and the formation of a new one which purchases the good will and continues the business, that the former firm name is continued, without anything to indicate a change in the partnership.  All that this legitimately means, or can mean, is that the new firm is the successor to the old one, continuing the same kind of business and enjoying its good will.  If it purported to mean that there had been no change in the partnership, it would be, to that extent, a fraud upon the public.  A purchaser of the good will of a

business sold by order of a court gets a right to the exclusive use of the firm name in the only way in which such a name can ever be used legitimately, as between a new firm or a new proprietor and the public, namely, to show a direct succession to the business, with all its valuable features.

The defendants in the present case continued the use of the firm name without change. They enjoyed, and must pay for, the only use of a firm name that can be made fairly, after a partnership has been dissolved. This right is not affected by the fact that these defendants might have used the same name to designate a new firm, if the good will of the old firm, including the right to use the firm name to show succession, had been sold to other persons. We are of opinion that there was no error in the decision of the master on this part of the case.

The hypothetical questions * were rightly admitted, and there is nothing to show that the elements of value entering into the good will were not properly considered.

The defendants requested the master to rule and find that " If any right to use the list of customers and enjoy their custom survived the dissolution of the firm, nevertheless it was not an exclusive right belonging to the firm, but the defendants were entitled to it without any obligation to account to the plaintiff for its enjoyment; or, if obliged to account at all, its value is to be determined as not exclusive in character." The master refused this request on the ground that it asked for a ruling on a question of law which he was not called upon to decide, and added that, if it was essential for him to express any opinion

---

\* These were very long questions, reciting the facts which the plaintiff's evidence tended to prove, and calling for the opinion of the witness as to the value of the business of the partnership at certain dates, as to the value of the share of the outgoing partner in the good will of the business at the time of dissolution on December 20, 1871, and as to the fair value that the remaining partners should pay for the good will of the partnership of 1870 which they appropriated to themselves on December 20, 1871.

The defendants objected to each of these questions on the ground that they included many elements not proper to be considered in estimating the value of the good will or were immaterial in the case, and on the further ground that the questions excluded other elements necessary to be considered and assumed rulings and findings of the court which had not been made in the case.

upon the question, he ruled that the language of the request did not state the law as he understood it.   The request assumes that, among the assets which were taken into possession by the defendants, there was a list of customers of the firm.   There is no doubt that a sale of the assets, including such a list, under a decree of the court, together with the good will of the business, would have given the purchaser a right to use the list as a means of increasing his business.   Without the purchase he would have had no access to the list.   After the purchase the former partners, although they might establish a new competing business, would have no right to compel the purchaser to furnish them a list of the customers of the old firm, or to submit a list for their examination.   The defendants, in reference to the obligation to pay for the list, and the good will whose value was increased by the possession of it, stand in the position of purchasers at a sale of the assets and good will.   If they had been purchasers, the plaintiff, as a former member of the firm, could not have availed himself of this list, although he might have set up a competing business and solicited such old customers as he could find.   The master was, therefore, right in refusing to rule that the defendants were not bound to account for the use of this list and the enjoyment of custom derived from its use.

The, defendants' exception to the master's refusal to adopt Rule I.* must be overruled.   It is not true that the liability of the defendants for good will is not affected by their use of the firm name.   They exercised the right of a purchaser of the good will, to use the name as an indication of succession to the busi-

---

* The rule referred to, which the master refused to adopt at the request of the defendants, was as follows :

" Rule I.   The defendants having paid the plaintiff for the assets of the firm in December, 1873, except a balance of $13,529.28, and being now held accountable for this balance separately from good will, and being held liable also for all profits obtained by them from the use of the plaintiff's money and the use of his share of the good will, their liability for good will is not affected by their use of the assets or firm name, their retention of the plaintiff's money, their appropriation of the business, or any alleged wrongful conduct of theirs at or after the dissolution or by any events subsequent to that time; but good will is to stand as an article to be estimated at its own intrinsic value at the moment of dissolution, independent of any of those considerations."

ness and of a continuance of it, presumably with the desirable features formerly belonging to it.

Other exceptions upon this branch of the case need not be considered particularly.

The next question is whether the master was right in refusing to allow anything to the defendants for their skill and services in conducting the business after the dissolution, whose profits from the use of the capital the plaintiff is permitted to share in the proportion that his capital used in the business bears to the whole. Under the former decision of the case in 185 Mass. 264, the plaintiff is given his election, either to have interest on his money, or the income derived from the use of it. Having elected to take the income, it is necessary to ascertain how much of the earnings are fairly imputable to the use of the capital. Under the former decision the master was directed to determine whether the defendants were equitably entitled to any allowance for their skill and services in conducting the business. The court did not deal with the facts so far as to decide whether, in the exercise of its discretion, such an allowance should be made. The general rule to be applied in such cases was considered in *Robinson* v. *Simmons*, 146 Mass. 167, where an allowance was made. If a person carrying on a business, using in part the capital of his former partner, acts in good faith, and the former partner elects to receive what his money has earned, it is equitable to take into account in determining the earnings, not only what expenses have been incurred in the business, but what is a fair compensation, in view of all the circumstances, for services rendered by the proprietor of the business.

In the present case, although the court in the former opinion intimated that the conduct of the business in the beginning was not free from culpability, it intimated at the same time, without deciding, that this culpability was not so great as to leave the defendants with no right to compensation for services. Taking all the facts of the case as they now appear, we are of opinion that the defendants are equitably entitled to an allowance which will diminish the amount found due the plaintiff in the master's report.

The master has reported that the evidence does not enable him to determine how much, if anything, should be allowed the de-

fendants.    Plainly it does not give a precise standard for the measurement of values.    But, in our opinion, it shows that something should be allowed.    It will not be more difficult to determine what is a reasonable compensation for such services as were rendered than to ascertain a *quantum meruit* in many other cases. When a fair price is fixed for such services in ordinary cases, it will be possible to determine whether, in view of the results of the business, more or less than the usual compensation should be allowed as the proportion of the income that ought to be imputed to services of the partners, as compared with that which capital should receive when services and capital are united in a joint enterprise.    Services rendered by the new partner, Hazlewood, will be treated, for this purpose, as if rendered by the defendants.

We discover no other error in the master's method of stating the account.

> *Case to be recommitted to the master to determine what allowance should be made to the defendants for their skill and services, and to state the account accordingly.*