FRANK S. MARTIN *vs.* WILLIAM S. JABLONSKI.

Worcester.　　September 21, 1925. — October 15, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Equity Jurisdiction*, Mistake, To enjoin interference with good will.　*Deed*, Construction, "Good will."　*Good Will.*　*Equity Pleading and Practice*, Answer.　*Evidence*, Extrinsic affecting writing.

Mistake, such as in equity might entitle a party to relief on a bill in equity for reformation of a written instrument, may be pleaded as a defence when proceedings are brought by a party to enforce such instrument.

Mistake as a ground for relief in equity against the literal provisions of an instrument in writing means a mistake common to all the parties to the instrument.

In a suit in equity to enjoin the defendant from selling a certain class of merchandise in competition with the plaintiff in violation of a bill of sale by the defendant to the plaintiff conveying all the defendant's right in a business which he and the plaintiff formerly had conducted as copartners, a master found in substance that, following a disagreement between them, the plaintiff purchased the defendant's share at a price nearly fifty per cent larger than the value of the share as shown by the partnership books, that the books took no account of the good will of the business, and that he received a deed conveying to him all the defendant's interest in the partnership "including the stock of merchandise, fixtures, bills receivable, good will and all other assets"; that the parties acted in the reaching of their agreements and the making of the deed through attorneys at law as their respective agents having full powers; that the defendant's agent through inadvertence or mistake inserted the words "good will" in the instrument, at no time intending that the defendant should be prohibited from going into business in the vicinity, but on the contrary protesting against any agreement to that effect; that the plaintiff's agent did not knowingly accept the instrument with an intention to obtain an agreement different from the oral agreement previously made between the agents; that, so far as the words "good will" were used, they were not intended by either agent to be a prohibition upon the defendant's going into the same business in the vicinity.　*Held*, that

(1) While evidence of antecedent and contemporaneous agreements, even though received without objection, as a matter of substantive law cannot vary the terms of an unambiguous written contract, and a sale by one partner to another of all his right, title and interest in and to the entire assets of the firm includes a sale of good will, nevertheless the words "good will," as used in the instrument in question, were not as a matter of law fixed terms of art;

(2) The words "good will," like many other trade terms, may have different meanings dependent upon the connection in which they are used and the purpose intended to be accomplished;

(3) The nature of good will as a part of the transaction terminating in the instrument using those words having been the subject of preliminary discussion and mutual understanding between the parties, the particular sense in which they were used in the instrument might be shown by parol;

(4) The master's findings meant that the words "good will" in their broad and usual sense were inserted in the contract by mistake, but that the meaning intended to be attributed to them by the parties was simply the advantages accruing to the location where the partnership business had been carried on and the probability that former patrons would continue to resort there to trade;

(5) The facts found by the master did not support the allegations of the bill, and a final decree dismissing the bill was warranted.

BILL IN EQUITY, filed in the Superior Court on February 14, 1924, seeking to enjoin the defendant from carrying on the business of selling men's and boys' clothing and furnishings in the town of Webster in competition with the plaintiff, and for damages.

In the Superior Court, the suit was referred to a master. Upon the filing of the master's report, the suit was heard by *Walsh*, J., by whose order there were entered an interlocutory decree confirming the master's report and a final decree that the words "good will" in the bill of sale given by the defendant to the plaintiff dated February 9, 1923, was not intended by both plaintiff and defendant to be a prohibition against the defendant engaging in Webster or elsewhere in a business similar to that sold to the plaintiff by the defendant; that the defendant should not be prohibited from engaging in Webster or elsewhere in a business similar to that which he sold to the plaintiff; and that the bill be dismissed with costs to the defendant.

The plaintiff appealed.

*E. A. Brodeur*, for the plaintiff, submitted a brief.

*W. I. McLoughlin,* (*F. M. Jablonski & J. J. Siarkiewicz* with him,) for the defendant.

RUGG, C.J.   The plaintiff seeks to restrain the defendant from engaging in competing business.   It is alleged in the bill that the plaintiff and defendant were copartners in the retail clothing business in Webster; that the defendant sold to the plaintiff by a contract in writing his interest in the copartnership including its good will; that the plaintiff has since conducted the business on his sole account, and that there has been violation of the terms and implications of that written contract by the defendant by engaging in a competing business.   The defendant in his answer set up amongst other matters that the word "goodwill" was inserted in the agreement of sale by mistake and also by fraud, and that it was expressly understood as a part of the sale that the defendant was not to be prohibited from engaging in similar business in Webster or elsewhere.

Mistake such as in equity might entitle a party to relief on a bill in equity for reformation of a written instrument may be pleaded as a defence when proceedings are brought by a party to enforce such instrument.   *Page* v. *Higgins,* 150 Mass. 27.   *Breed* v. *Berenson,* 216 Mass. 397.

The court will not allow an instrument to be affected by parol or other extrinsic evidence unless the mistake is made out according to the understanding of both parties.   Mistake as ground for relief in equity means a mistake common to all the parties to a written instrument.   *Sawyer* v. *Hovey,* 3 Allen, 331.   *Dzuris* v. *Pierce,* 216 Mass. 132, 135.   *Burke* v. *McLaughlin,* 246 Mass. 533, 541. *Porter* v. *Spring,* 250 Mass. 83, 86.

The case was referred to a master.   Since there is no report of the evidence, the findings of fact made by the master must be accepted as true.   *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334.

A final decree was entered in favor of the defendant and the plaintiff appealed.   The question to be decided is whether the decree lawfully could have been entered on the facts found.   *First Baptist Society in Brookfield* v. *Dexter,* 193 Mass. 187, 189.   *Pevey* v. *McGrath,* 243 Mass. 451, 454.

*Commissioner of Banks in re Cosmopolitan Trust Co.* 249 Mass. 144, 147.

The pertinent facts are that the plaintiff and defendant had been copartners in the retail clothing business in Webster, but dissolved their copartnership in February, 1923, by mutual consent. There was disagreement between them as to the true state of the partnership accounts and their respective rights and obligations touching assets and profits. The partnership articles contained provision to the effect that, if either of the partners should desire to sell his interest in the business, opportunity must be given to the other to purchase at a price to be ascertained as therein specified. By that method, according to the books and inventory of the partnership, the price to which the defendant would be entitled for his share was $4,750. After negotiations the plaintiff paid to the defendant $7,000 in settlement of all controversies and for transfer of the defendant's interest. The plaintiff continued the business at the same place and the defendant retired. The parties were represented in these negotiations by their respective attorneys, who were also their general agents. General agency in this connection imports all the power of the principals touching this particular transaction. The terms of the settlement and transfer were embodied in a written contract and signed by the parties. By its words the defendant sold and transferred to the plaintiff all his right, title and interest in the partnership "including the stock of merchandise, fixtures, bills receivable, good will and all other assets." It also contained a release of the defendant's claims. The defendant soon after entered the employ of another clothier in Webster, but in November, 1923, he hired a store in company with another for the purpose of engaging with him as partner in the clothing business in Webster. The new partnership had already expended considerable money for furniture, fixtures and stock in trade when this suit was brought.

The material part of the master's findings on mistake and fraud and understanding that the defendant was not to be precluded from engaging in a similar business are: "The respondent has done nothing to interfere with the business

of the complainant unless the taking of the lease and the going into partnership and the buying of merchandise may be construed as an interference on the rights of the complainant. I find that Siarkiewicz [general agent for the defendant] at no time intended that his client should be prohibited from going into business in Webster but on the contrary at all times protested against any agreement to that effect. I find that Siarkiewicz, either inadvertently or through mistake inserted the words 'goodwill' in the agreement of February 9. I find that Berger [general agent for the plaintiff] neither attempted nor did practice any fraud in any of his dealings with Siarkiewicz, but also find that at the time of the delivery of the agreement of February 9 he knew that Siarkiewicz intended to protect his client and protested against any agreement to prohibit the respondent from going into business in Webster. I find that Berger did not knowingly accept the agreement of February 9 with any intention to obtain an agreement in writing different from the oral agreement between himself and Siarkiewicz. I find that so far as the words 'good will' were used, that they were not intended by either Siarkiewicz or Berger to be a prohibition upon the respondent's going into the same kind of business in Webster."

Evidence of antecedent and contemporaneous oral agreements, even though received without objection, cannot as matter of substantive law vary the terms of a written contract. *Goldband* v. *Commissioner of Banks*, 245 Mass. 143, 150, and cases there collected. *Beacon Tool & Machinery Co.* v. *National Products Manuf. Co.* 252 Mass. 88. Such evidence is admissible upon the issue of mistake and in appropriate instances to explain the relations and business methods of the parties in the light of which the contract is to be interpreted. *Avondale Mills* v. *Benchley Brothers, Inc.* 244 Mass. 153, 157. *Snider* v. *Deban,* 249 Mass. 59, 61. *Butler* v. *Prussian,* 252 Mass. 265.

It is the law of this Commonwealth that a sale by one partner to another of all his right, title and interest in and to the entire assets of the firm includes a sale of good will. It also has been "assumed that a case where there was such

an implied sale of good will stood on the same footing as an express sale and grant of it" so far as concerns the right of such vendor to engage in competing business. *Marshall Engine Co.* v. *New Marshall Engine Co.* 203 Mass. 410, 421. *Hoxie* v. *Chaney,* 143 Mass. 592, 594. It was laid down in *Old Corner Book Store* v. *Upham,* 194 Mass. 101, 105, that, "In each case where the good will of a business is sold and the vendor sets up a competing business it is a question of fact whether, having regard to the character of the business sold and that set up, the new business does or does not derogate from the grant made by that sale." In most cases which have arisen in this court the sale has been held to be of such nature and under such circumstances as to preclude the vendor from engaging in competing business. *Hutchinson* v. *Nay,* 187 Mass. 262. *Old Corner Book Store* v. *Upham,* 194 Mass. 101. *Foss* v. *Roby,* 195 Mass. 292. *Gordon* v. *Knott,* 199 Mass. 173, 178. *Moore* v. *Rawson,* 199 Mass. 493, 497. *Marshall Engine Co.* v. *New Marshall Engine Co.* 203 Mass. 410, 420–424. *Fairfield* v. *Lowry,* 207 Mass. 352, 358, 359. *C. H. Batchelder & Co., Inc.* v. *Batchelder,* 220 Mass. 42, 44. *Rosenberg* v. *Adelson,* 234 Mass. 488. *Sherman* v. *Pfefferkorn,* 241 Mass. 468, 474. *Gaines* v. *Hake,* 247 Mass. 88, 92. *Ruggiero* v. *Salomone,* 248 Mass. 237. In other cases it has been held that the new business did not derogate from the grant and might lawfully be undertaken by the vendor. *Bassett* v. *Percival,* 5 Allen, 345. *Hoxie* v. *Chaney,* 143 Mass. 592. *Webster* v. *Webster,* 180 Mass. 310.

These principles would be precisely applicable to the case at bar if the written contract stood unchanged and unaffected by the findings of the master. But these principles do not quite reach to the facts here disclosed on the master's report.

The meaning of terms susceptible of more than one signification as used in commercial transactions may be shown by evidence outside the written contract. *Stoops* v. *Smith,* 100 Mass. 63, 66. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193, 200. *Jennings* v. *Puffer,* 203 Mass. 534, 538. *W. R. Grace & Co.* v. *National Wholesale Grocery Co., Inc.* 251 Mass. 251, and cases there collected. The words "good will" like many other trade terms, may have different mean-

ings dependent upon the connection in which they are used and the purpose intended to be accomplished. It may mean only the advantages of a particular location for attracting business and the expectation that former customers will continue to resort there. *Bassett* v. *Percival*, 5 Allen, 345, 347. It may include in addition to those factors all that goes with a business in excess of its mere capital and physical value, such as reputation for promptness, fidelity, integrity, politeness, business sagacity and commercial skill in the conduct of its affairs, solicitude for the welfare of customers and other intangible elements which contribute to successful commercial adventure. *Angier* v. *Webber*, 14 Allen, 211, 215. When the nature of good will as a part of a transaction has been the subject of discussion and mutual understanding between the parties, the particular sense in which those words used may be shown by parol.

We interpret the master's findings as a whole to mean that the words "good will" in their broad and usual sense, were inserted in the contract by mistake, but that the meaning intended to be attributed to them by the parties was simply the advantages accruing to the location where the partnership business had been carried on and the probability that former patrons would continue to resort there to trade. The subsidiary facts support this general conclusion. The terms of the partnership articles, as to the method of ascertaining the value of the share of a retiring partner for purchase by the purchasing partner remaining in the business, by necessary implication exclude any value of good will. The basis of the sale in question did not attribute any value to the good will. The only claim put forward by the defendant other than the value ascertained according to the partnership articles was that the plaintiff had taken more than his share of the profits. The negotiations upon which the contract was based expressly excluded the idea that the defendant was to be precluded from engaging in similar business in the neighborhood. The findings of the master do not support the allegations of the bill.

All these considerations lead to the conclusion that there is no error of law in the master's report or in the final decree.

*Decree affirmed.*