## WILLIAM A. HUTCHINS *vs.* FRED M. PAGE.

Middlesex.    November 29, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Partnership,* Accounting between partners. *Equity Pleading and Practice,* Master. *Good Will. Estoppel. Abandonment. Evidence,* Presumptions and burden of proof.

At the end of the term of a business partnership formed by an agreement in writing between two persons, one of the partners ceased to be connected with the firm's business of manufacturing and the other, without making any effort to sell the machinery, stock or finished merchandise of the firm in the general market or to any one other than himself, took into his possession and control all of the firm's assets, among which were many machines which could not be bought in the general market but were of design and construction especially adapted to the business conducted by the firm, and continued to carry on the business, which was large and profitable. *Held,* that it was proper that such continuing partner be charged in his accounting with his former partner not with the fair market value of the machinery, fixtures and other assets in the open market, but with their fair value to him or to one in his position. .

From a master's report in a suit in equity for an accounting between partners, it appeared that the partnership was created by an agreement in writing according to which it was to continue for five years, during the first two of which the plaintiff was to receive twenty per cent of the profits and during the remaining three was to receive forty per cent, that the defendant kept all the books and that the plaintiff knew little about books and left the whole matter to the defendant, that the defendant repeatedly had rendered incorrect accounts to the plaintiff and that through the defendant's fraud or negligence the books were

kept so improperly that it was impossible to determine with certainty, as to some of the profits for which the defendant had not accounted, to what part of the five years they should be referred. The master also found that the evidence did not enable him to correct or reconstruct the books in regard to such profits, and that the only inventories of stock for four years had been destroyed. The master awarded to the plaintiff forty per cent of the profits as to which the defendant had made no accounting. The evidence was not reported. The defendant excepted. *Held*, that, since the master had made the best finding that he could from the books and accounts, and the defendant was responsible for the way in which the books were kept and for the condition of them before the master, and had failed to show that the finding of the master was erroneous, the exception must be overruled.

Where, by the provisions of an agreement creating a partnership between two persons, a limited partnership was to have been formed, but the partnership has been carried on for the entire term of five years covered by the agreement without the requirements of R. L. c. 71, §§ 4–6, with regard to the recording and publishing of a certificate by the members of such a partnership, being complied with, in the accounting at the termination of the partnership the partners, under R. L. c. 71, § 11, between themselves as well as otherwise are to be considered as general partners.

Upon the termination of a partnership between two persons in accordance with the provisions of the partnership agreement, one of the partners continued the business at the same place, using the assets and the name of the firm, and the other partner retired. There was no talk or arrangement between them with regard to the good will. The retiring partner did not know that he had any rights with regard to the good will until he consulted an attorney at law nearly a year after the termination of the partnership. Thereafter he did nothing to prejudice whatever rights in the good will he had, but brought a bill in equity to enforce such rights within a month after he consulted the attorney. A master to whom the suit was referred found that the plaintiff had lost his rights in the good will by abandonment. *Held*, that the finding was erroneous, since the plaintiff could not lose such a right by mere abandonment so long as he was ignorant of its existence.

Where at the termination of a partnership one of the former partners with the acquiescence of the other appropriates and uses the good will and assets of the partnership, makes no effort to sell them, but continues to carry on the business at the same place and under the same firm name, he is equivalent to a purchaser of the good will and is liable to account to his former partner for his share of the fair value thereof, except that, in determining such value, it is to be estimated as it would have been if the good will had been disposed of at a judicial sale, that is, at its value with the right of the retiring partner to set up a competing business among the customers of the firm and others.

BILL IN EQUITY, filed in the Superior Court on April 9, 1906, for an accounting after the dissolution of a partnership which had existed under an agreement for five years between the plaintiff and the defendant in the business of manufacturing leather, cotton and paper specialties at Lynn.

The suit was referred to Samuel C. Bennett, Esquire, as

master.   Exceptions of both parties to his report were heard and overruled by *Wait,* J., and a final decree was entered. Both the plaintiff and the defendant appealed.

The facts are stated in the opinion.

*W. W. Kennard,* ( *W. J. Drew* with him,) for the plaintiff.

*H. L. Boutwell,* ( *W. H. Hastings* with him,) for the defendant.

KNOWLTON, C. J.    This is a bill for an accounting, brought by a partner against his copartner after the dissolution of the partnership.   The general question is how much shall the defendant pay the plaintiff.   Both parties took exceptions to the master's report and appealed from the final decree confirming the report.   The defendant took the partnership property and continued to carry on the large and profitable manufacturing business in which the firm had been engaged.   The first question raised is whether the master applied the right rule in determining the value of the tangible property.   He ruled that the fair market value of the machinery, fixtures and other assets, in the open market, was not necessarily the value with which the defendant should be charged; but that having preferred to acquire them, he must now pay the fair value of them " to him, or to one in his position."   He also found as follows : " Page took into his possession and control all the firm's assets ";. . . " apparently he made no effort to sell the machinery, stock or finished merchandise of the firm in the general market, or to any other person than himself.   He evidently intended and expected to be able to settle with Hutchins upon some figure which would represent the latter's interest in the firm's assets and business." This business involved the use of numerous machines, a large number of which, the master found, " could not be bought in the general market, but were machines of special design and construction."   About seventy men were employed in the business, and it was earning very large profits at the time of the dissolution of the partnership.

The question which the master decided was whether the property should be valued at what it would bring if carried away and sold in the general market, or at what it was worth to be used as a part of a going concern.   An owner who wished to sell it would endeavor to find a customer who would want it for the use to which it was best adapted.   The master seemingly

found that it was worth more to be kept together in its place, and used in that business, than it would bring if separated and carried away, to be sold piecemeal in the general market. It does not appear that the firm had legal rights, beyond possession, in the real estate where the business was done ; but it was shown that the defendant was able afterward to continue in possession of the same real estate, and presumably, if he had sold the business, the same opportunity could have been secured for the purchaser. Probably another person, familiar with that business, would have given as much for it as the master has found it to be worth to the defendant. If the defendant was to sell it, he should have endeavored to sell it in the way in which it would bring most ; and the master was undoubtedly right in finding it was most valuable for use where it was. If the defendant chose to keep it, he should pay for it what other persons who knew all about it and who might want it for use in that place would have been willing to give for it. One who wished to conduct such a business, if he had not the machinery ready on hand, would have been obliged to procure the machines and set them up, and provide everything necessary for the prosecution of the business. The finding was simply an application of a familiar and equitable principle which has often been applied in analogous cases. *Beale* v. *Boston,* 166 Mass. 53. *Troy Cotton & Woolen Manufactory* v. *Fall River,* 167 Mass. 517, 520. *Wall* v. *Platt,* 169 Mass. 398. *Washington Mills Manuf. Co.* v. *Weymouth & Braintree Mutual Ins. Co.* 135 Mass. 503. *Stickney* v. *Allen,* 10 Gray, 352.

The defendant also contends that the master was in error in allowing the plaintiff forty per cent of the additional profits that the master found due him, which was the share to which he was entitled during the last three of the five years that the partnership continued, instead of twenty per cent, which was the share to which he was entitled during the first two years of these five. As to this, the evidence tends to show that nearly, if not quite, all of the increase allowed by the master was properly referable to the profits of the last three years. The books had been kept by the defendant, and the plaintiff knew little about books, and left the whole matter to the defendant. The defendant had repeatedly rendered him incorrect accounts of the profits, and, in

finally making up the amount due the plaintiff, he entered the property at such values that the amount found due the plaintiff by the master, without allowing anything for the good will of the business, exceeds the amount shown in the defendant's accounts by $5,551.54. Through the defendant's fraud or negligence, the books were so improperly kept that it is impossible to determine with certainty, as to some of the profits, to what time they should be referred. The master says that the evidence does not enable him to correct or reconstruct the books in this particular, and that the only inventories of stock for four years have been destroyed. As the master has made the best finding that he can from the books and accounts, and as the defendant is responsible for the way in which the books were kept and for their present condition, and as he fails to show that the finding of the master is erroneous, this exception is overruled.

The plaintiff's exceptions raise the question whether he is entitled to an allowance for the good will of the business. The articles of copartnership provided for a limited partnership. Through the failure to comply with the statute, the partners became subject to the liabilities and had the rights of general partners. R. L. c. 71, §§ 4, 6, 11. The first question is whether the original intention to form a limited partnership affects the rights of the partners in reference to the good will, on dissolution. We cannot say that it does. See *Nutting* v. *Ashcroft,* 101 Mass. 300, 302. The partnership was to continue for five years, and at the end of the term there was to be a settlement of the partnership affairs and a division of the assets. Neither party had any right to avail himself of the good will of the business, after the termination of the partnership, without paying for it. Each could commence a new business in his own name, and take advantage of the fact that he had formerly been a member of this firm. But neither had a right, as against the other, to continue the business of the firm, and retain the advantages that come from a direct succession and a continuation of a going business. The value of this right, so far as it had a transferable value, belonged to both; and either could insist upon having his share of the benefit of it. *Moore* v. *Rawson,* 199 Mass. 493, 498.

The master has found that there was a valuable good will which belonged to the firm. The only remaining question is

whether the defendant has so conducted himself as to be accountable to the plaintiff for it. The parties made no arrangement in regard to it and did not talk about it. Indeed, the master has found that the plaintiff did not know that he had any rights in this particular until he consulted a lawyer in March, 1906, nearly a year after the termination of the partnership. He also found that he lost his right by abandonment. He could not lose such a right by mere abandonment, so long as he was ignorant of its existence, except as the lapse of time might diminish the value of the right. Nothing less than estoppel could deprive him of it; and he did nothing that would work an estoppel. It is expressly found that, after he consulted counsel, he did nothing to prejudice whatever rights in the good will he had at that time. In less than a month afterwards he brought this suit to recover for the good will.

The real question in this case is whether the good will has been lost as a valuable asset by the neglect of the parties, or whether it has been used and appropriated by the defendant. In its material facts, does the case resemble *Hutchinson* v. *Nay*, 183 Mass. 355; *S. C.* 187 Mass. 262, or *Moore* v. *Rawson*, 185 Mass. 264; *S. C.* 199 Mass. 493, and *Griffith* v. *Kirley*, 189 Mass. 522?

In the first of these cases the firm was dissolved by the death of the plaintiff's intestate. The next day after his death the surviving partner crossed the " & Co." off from the bill heads that had been used by the firm, leaving them with only his name upon them. In less than five months afterwards he bought of the plaintiff all of the deceased partner's "interest in the firm and chattels, except the good will and outstanding accounts," and immediately after that had " & Co." painted off from the carts of the teaming business which the firm had carried on. It was expressly found that he did not buy the good will, and the effect of all the evidence was to show that he did not attempt to appropriate it, but only to exercise his right to carry on a new business in his own name among the customers of the old firm, as well as others. Probably, under the circumstances of that case, as against this right of the surviving partner, the good will of the business would have been of but little value.

In the present case " Page [the defendant] went on with the business in the same place and under the same name, namely,

F. M. Page and Company. . . . Page took into his possession and control all the firm's assets, and, so far as appears, collected the bills and accounts receivable, and ·discharged the liabilities. Apparently he made no effort to sell the machinery, stock or finished merchandise of the firm in the general market, or to any other person than himself. He evidently intended and expected to be able to settle with Hutchins upon some figure which should represent the latter's interest in the firm's assets and business, and, so far as appears, he was ready and willing to pay whatever amount the parties might agree upon. There is no evidence that Hutchins ever complained or objected to the use which Page was making of the firm's assets, both tangible and intangible, but Hutchins' sole objection was that the statements rendered, which purported to show the amount of Hutchins' interest, were incorrect." These are findings that there was an appropriation of all the assets of the firm, with the acquiescence of the plaintiff, and with an expectation to pay for them. The defendant rendered incorrect accounts, and the parties were in dispute as to the value of these assets. Among the assets so appropriated was the good will of the business, which the defendant used and enjoyed as fully as it is ever possible to use such a good will after a purchase of it under an order of court in winding up the affairs of a partnership. A liability to pay for it follows in the same way as the liability to pay for any other part of the assets that he took and appropriated. The case comes within the principle of the last two cases cited above. An appropriation and use of the good will and assets by one partner, with the acquiescence of the other, creates the same liability to account for them and their value as a wrongful appropriation of them. It is equivalent to a purchase. In the present case the liability of the defendant to pay for the good will and other assets of the firm is precisely the same as if the plaintiff had given him a bill of sale of the good will and assets, to be paid for at their fair value, except that, in determining the value of the good will, it is to be estimated as it would have been if disposed of at a judicial sale, that is, at its value, with the right of the plaintiff to set up a competing business among the customers of the firm and others. This appropriation and use of the good will of the firm, under such circumstances, virtually creates an implied contract to pay

for it whatever it is worth. This makes it unnecessary for the other partner to apply for a sale of it.

Besides the cases cited above, cases in which some of the principles involved in this decision are discussed are, *Lothrop Publishing Co.* v. *Lothrop, Lee & Shepard Co.* 191 Mass. 353, *Old Corner Book Store* v. *Upham,* 194 Mass. 101, *Wedderburn* v. *Wedderburn,* 22 Beav. 84, 104, *Boon* v. *Moss,* 70 N. Y. 465, 473, *Slater* v. *Slater,* 175 N. Y. 143.

The decree should be modified by adding to the amount to be paid to the plaintiff the value of the plaintiff's interest in the good will, as found by the master.

*Ordered accordingly.*