[Civ. No. 3311. Fourth Dist. July 12, 1944.]

MERRILL T. MILLER et al., Respondents, v. C. WESLEY HALL et al., Appellants.

Hillyer & Hillyer and Gray, Cary, Ames & Driscoll for Appellants.

Monroe & McInnis for Respondents.

BARNARD, P. J.—This is an action for declaratory relief and for an accounting. In September, 1931, Mr. Miller and Mr. Hall entered into a partnership known as Miller, Hall & Co. for the purpose of conducting a brokerage business dealing in stocks, bonds and securities.

On April 11, 1934, they signed a written agreement which recited that the death of either partner would result in financial loss to the survivor, and that each partner had taken out two policies in the New England Life Insurance Company for $20,000 and $10,000, respectively. It was then agreed that all premiums on these four policies should be paid from partnership funds, and that upon the death of either the amount of insurance on his life should be immediately collected by the survivor and paid over to the widow of the deceased partner in full payment for her share of the partnership property and assets, including prospect lists, good will, etc., with one exception which is not material here.

Four such policies of insurance were taken out, two on the life of each partner. One policy on the life of each was made

payable to his wife, respectively, while the other policy was made payable to the other partner. This conformed to another provision in the contract which provided that the policies might be made payable "to the widow of the deceased direct," but with the same effect as described. The premiums on all four policies were paid out of the assets of the partnership until its dissolution.

Each of the partners had previously been in the same business. The partnership occupied quarters in San Diego which had theretofore been occupied by a well-known brokerage firm of which Miller had been the manager. The business of the partnership prospered and it enjoyed an excellent reputation and built up a valuable good will. In addition to the list of investors brought into the firm by both partners and thereafter increased, the firm possessed several sets of records showing a complete history of certain bond issues, including one of municipal bonds originally brought into the firm by Miller and one of Canadian bonds built up by the firm, all being cross-indexed and of considerable value to anyone engaged in that business.

On August 8, 1941, Mr. Miller sustained a paralytic stroke, which has permanently incapacitated him from engaging in business. In a few months it became apparent that he could never return to the business and Hall sought a dissolution of the partnership to which Miller agreed. Before the affairs of the partnership were wound up Hall took possession of the quarters occupied by the firm, together with all records and fixtures, and had the lock on the door changed. He sent out a circular to the customers of the firm announcing a change in the name of "our firm" from Miller, Hall & Co. to Wesley Hall & Co., with the same address. This circular referred to one distributed seven years before by Miller, Hall & Co., announced that "our principles and policies haven't changed a bit," and clearly represented that the business of Miller, Hall & Co. was being continued under the new name.

Negotiations over the division of the assets of the firm continued over some months. Cash and securities and certain other things were divided equally between the former partners, but they were unable to reach an agreement with respect to the furniture and fixtures, the good will, including the lists and records, and the life insurance policies.

In this action which followed the court found the value of the furniture and fixtures and ordered the defendant Hall to

account to the plaintiffs for one-half thereof. This item is not questioned on this appeal. The court also found that Hall had appropriated to himself the business, records and good will of the partnership and had held himself out as having succeeded to the same, and that he should account therefor as a part of the assets of the partnership. It was found that in view of all the facts and circumstances surrounding the dissolution this good will was of the reasonable value of $15,000, and Hall was ordered to account to the plaintiffs for one-half of that value. It was further found that the contract between the partners made no express provision for the disposition of the four policies of life insurance in case of a dissolution; that it was the intent and purpose of the parties that said policies should be carried for the mutual protection of the partners and their families; that it was not intended that either partner should retain insurance upon the life of the other, but that ultimately the proceeds of said policies should go to the family of each insured, respectively; that said policies are and in equity should be the property in each instance of the partner upon whose life they are written, respectively, and of his wife; and that by reason of the prior payment of the premiums by the partnership there should in equity be an adjustment of the difference in the surrender values of the policies, those upon the life of Miller being at a higher premium rate and having a higher surrender value. Miller was, therefore, ordered to account to Hall for this difference. A judgment was entered in accordance with the findings awarding the plaintiffs $7,584.74, after making the other adjustments referred to, decreeing that Hall is the owner of the business formerly conducted by the firm including the furniture, fixtures, records, prospect lists and good will; and that the insurance policies are the property of the parties on whose lives they were issued and their wives, respectively. From this judgment the defendants Hall have appealed.

It is first urged that the court erred in holding that the good will of this business had any value, and in requiring Hall to account to Miller for anything in that regard. It is conceded that under some circumstances the good will of a business may be of a considerable value. But it is argued that upon the dissolution of a partnership each of the partners has a right to continue in the same line of business. It is then argued that in view of that right to compete it must

be held, as a matter of law, that upon such a dissolution the good will of the business is valueless and neither partner may be required to account to the other with respect thereto, and that this is true whether or not one of the partners does or can reengage in the same line of business since both have an equal right to do so. Cases from this state are cited in support of the rule that in case of a dissolution each partner has a right to reengage in the same line of business in the absence of an agreement to the contrary. This rule may be conceded but it is not controlling here. The appellants also cite *In re Brown,* 242 N.Y. 1 [150 N.E. 581, 44 A.L.R. 510]; *Von Bremen* v. *MacMonnies,* 200 N.Y. 41 [93 N.E. 186, 21 Ann.Cas. 423, 32 L.R.A.N.S. 293]; *Hutchinson* v. *Nay,* 187 Mass. 262 [72 N.E. 974, 105 Am.St.Rep. 390, 68 L.R.A. 186]; *Hutchins* v. *Page,* 204 Mass. 284 [90 N.E. 565, 134 Am.St.Rep. 656]; *Williams* v. *Farrand,* 88 Mich. 473 [50 N.W. 446, 14 L.R.A. 161]; and *Dyer* v. *Shove,* 20 R.I. 259 [38 A. 498]. All of these recognize the fact that the good will of a business may have a value and that this value may be considerably less if one or all of the former owners are to continue in the same line of business. None of them, however, support the proposition, as a matter of law, that in the case of a dissolution of a partnership the theoretical right of each partner to continue in business will necessarily destroy all value of the good will as an asset of the partnership.

In *Moore* v. *Rawson,* 185 Mass. 264 [70 N.E. 64], the question was presented as to whether a retiring partner was entitled to an accounting with respect to his interest in the good will of the business. The court there said:

"While no rule can be laid down by which the good will of a trading partnership in all cases can be ascertained and its value fixed with mathematical precision and accuracy, yet, if it be assumed that a firm has been in existence for a time long enough to establish a business sufficiently permanent in character to include not only its customers, but the incidents of locality, and a distinctive name, these advantages constitute a going business enterprise; and it may then be said that the name and what is done under it go together, and a good will exists which forms an asset of commercial value in a winding up between partners. The fact that such an asset may be difficult of appraisement is no legal reason for denying to the retiring partner an appraisal, if it be proved that he is entitled to it."

In *Griffith* v. *Kirley,* 189 Mass. 522 [76 N.E. 201], where a similar question was involved, the court said:

"In the case before us, the defendant, as before stated, has taken exclusive possession of the firm property to which the good will is attached, and is carrying on the business exactly as though he were the purchaser of it. Under these circumstances the court may regard the defendant, so far as respects the good will, as though he had purchased under an order of the court for the sale of the property and good will, and therefore that he should be charged with the value of the good will."

In *Hutchins* v. *Page,* 204 Mass. 284 [90 N.E. 565, 134 Am. St.Rep. 656], involving similar circumstances, the court said: "Neither party had any right to avail himself of the good will of the business, after the termination of the partnership, without paying for it." In *Ruppe* v. *Utter,* 76 Cal.App. 19 [243 P. 715], the court said:

"Good will is property recognized and protected by the law as such and capable of sale and transfer from one owner to another. It is an asset which may be sold in connection with a business. How far its value might be affected by the competition of the retiring partner is an element of course to be taken into consideration in fixing of such value . . ."

From all of these cases, and many others, it appears to be well recognized that the good will of a business may have a considerable value, that while this value may be seriously affected by the competition of a retiring partner the question of such value is one to be determined in the light of all the facts of a particular case, and that where such a value exists and is appropriated by one of the former partners for his own use and benefit he may be required to account to the other partner for his interest in any such value as may appear under the circumstances.

In the instant case, beyond question, the good will of this business would have had a considerable value had the business been sold to a third party. Regardless of his theoretical right to continue in the same line of business it fully appears that the physical disqualification of Miller effectively eliminated the possibility of any such competition. At the time of the trial Miller had been unable to engage in business for a period of a year and eight months. His physician testified that his condition would never get any better. Under these

circumstances, which were properly considered by the court, this good will had an actual value which was appropriated by Hall. In this situation, we are unable to hold. as a matter of law, that Hall was under no duty to account to Miller for the value of this good will.

It is next contended that the evidence does not sustain the value of $15,000 placed thereon by the court. It is argued that most or all of the witnesses testified to the general effect that they would not care to buy this business or allow much of anything for the good will on the basis and understanding that Miller would immediately enter into competition in the same line of business. Not only was this not the situation here but this was merely a matter to be taken into consideration in fixing the value. There was ample evidence that the value of this good will was from $15,000 to $25,000. The court fixed it at $15,000 and ordered Hall to account for one-half of that, or $7,500. This was considerably less than the profits drawn by each partner during each of several years preceding the dissolution. There was much evidence of the value of the records and files as a part of the good will and the value fixed by the court is not only supported by the evidence but seems reasonable.

Appellants' final contention is that the court erred in awarding to each partner the insurance policies on his own life with an adjustment of the surrender values. It is argued that as partnership assets all four policies should have been divided equally, that is, that one-half of each of the policies should have been set aside to each of the partners. It is suggested that because of the state of Miller's health the policies on his life may be expected to mature at an earlier date than those on Hall's life, and that Hall should be entitled to any benefit resulting from this.

The contract between the parties regarding this insurance makes no provision for what shall be done in case of a dissolution. It does indicate an intention that neither party should ever collect and retain any proceeds of the insurance on the life of the other. It was designed to apply in the event of an interruption of the partnership business due to the death of one of the partners. Its provisions are inapplicable now since the partnership has been dissolved. Moreover, no one can now collect the insurance money, and the parties have distributed most of the assets of the firm, which the proceeds of the policies were to cover.

The premiums having been paid by the partnership the interests of the parties in these policies at the time of the dissolution constituted a partnership asset. In an accounting between the partners, which is a matter of equity, that asset should be divided in a manner that is fair and equitable to both parties. Neither party then had an insurable interest in the life of the other and it would hardly seem equitable to force the parties, in practical effect, to continue the partnership with respect to this matter after all other elements had been fully settled and adjusted. The policies would lose any value beyond their surrender value if the premiums were not kept up, and the rights of one might be defeated by the failure of the other to pay his share of the premiums. One might desire to drop certain policies while the other wished to drop different policies. Any additional value from now on will be largely the result of subsequent payment of premiums rather than of payments made by the partnership. While the policies have potential values those values are not only dependent upon future conditions but they may be best preserved by continuing conditions which are favorable to keeping them in force.

Under these circumstances, the most equitable way to divide this asset is on the basis of its present value, the surrender value of the policies, with an adjustment of the difference therein based upon the respective costs, and by allocating to each party the policies on his own life, thus sharing the future obligations and values. This is not only a fair division of both the present and future value, but it enables each to preserve and develop the potential value of his own policies free from any possibility of its being destroyed by any act of the other. In this way each receives a like share of the entire existing asset, and in a very real sense there is being returned to each partner that which he contributed to the partnership business. We find no error in the court's award with respect to this insurance.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 1, 1944.