DAVE HANSEN, Plaintiff and Respondent, *v. BEN HAN-SEN*, Defendant and Appellant.

No. 9281.

Submitted May 10, 1956. Decided May 25, 1956. Rehearing Denied June 11, 1956.

297 Pac. (2d) 879.

Messrs. Shallenberger & Paddock, Missoula, Messrs, Rogn-

lien & Murray, Kalispell, Mr. James A. Cumming, Columbia Falls, for appellant.

Mr. T. H. MacDonald, Messrs. Baldwin & Baldwin, Kalispell, for respondent.

Mr. William F. Shallenberger and Mr. MacDonald argued orally.

MR. JUSTICE BOTTOMLY:

This is an action brought by plaintiff, Dave Hansen, to dissolve a partnership and to terminate the partnership affairs and to sell the partnership property. Defendant Ben Hansen sought similar relief and also requested the appointment of a receiver. A receiver was appointed and the property sold. From the judgment defendant appeals.

The plaintiff, Dave Hansen, and his brother Ben Hansen, the defendant, entered into an oral agreement of partnership in 1947 to operate a hotel, lunch counter and bar at Rexford, Lincoln County, Montana. The agreement was that each would receive fifty per cent of the net proceeds or profits of the partnership operation.

The record discloses that while the partnership was so operating they agreed to build a new large building in which to conduct their partnership operations; that they purchased Lots 5 and 6 and the north 20 feet of Lot 7 of Block 2 of the Townsite of New Rexford, Lincoln County, Montana; that in 1947 the defendant, Ben started to build the new building, which was constructed of logs, 60 feet long and 30 feet wide, on the above described premises, as well as to operate the business in the old premises; that Ben continued to work on the new building until it was ready for occupancy; that during most of the time while the defendant Ben was working on the new building and operating the business in the old building, the plaintiff Dave was engaged in ranching, which Dave was conducting individually and which was for Dave's personal advantage as was the sawmill business which Dave was also operating with another person as a partner.

Dave and his wife left Rexford and went over the mountains to work at Chester, Montana, during the summer of 1948, returning to Rexford, Montana, late in December 1948. Ben operated the business in the old building and worked on the new building during this period of time. None of the proceeds of Dave's wages from his outside work, nor any profits or proceeds from his ranching operation and his sawmill business were turned into or credited to the business of Ben and Dave's partnership.

The assets of the partnership consisted of beer and liquor licenses, fixtures and supplies for conducting a bar and lunch business, and the real estate and fixtures thereon.

The new building was under construction when Dave returned, and on or about December 28, 1948, a fire completely destroyed the building and hotel in which they had been operating. During the fire Dave's hands were badly burned and he was taken to a hospital in Whitefish, Montana, where he was hospitalized for some time. After release from the hospital Dave spent some time in Kalispell recuperating.

The record shows that after the fire defendant Ben, by intensive work, working until 2:00 or 3:00 o'clock in the mornings, was able to get the new building closed in by the spring of 1949 which building was occupied by the partnership doing business under the name of the "Frontier Club."

There is no dispute that after June 1949 and until the receiver took charge in March of 1952 Dave continued to have full charge and management of all the partnership affairs and was in control of all the partnership property and is therefore properly to be held to the responsibility as managing partner. It is of no legal import whether from June 1949 to March 21, 1951, Dave did or did not forcibly or otherwise exclude Ben from participation in the partnership business. In any case he was solely in control of the partnership business, the bank account and the entire and sole managing partner, carrying on the partnership business in which he conceded that Ben had an equal interest with him. Under such facts and circumstances it was Dave's duty to keep full, true and exact accounts and records covering

the business of the partnership under his management. By his failure to discharge his duty therein he cannot defeat the rights of his copartner, nor can he profit himself upon such an accounting as had here because he himself did not keep the books and accounts required by the law that he keep but in which duty he has defaulted.

Mrs. Clara Pritchard, called as a witness for *plaintiff*, testified *inter alia* that she was a sister of the parties to this lawsuit; that she and her husband conducted and managed the business for six months, from July 3, 1951, until January 1, 1952; that no inventory was taken when she left. Mrs. Pritchard testified:

"Q. Now, Mrs. Pritchard, will you tell us what this business made a month, on an average, while you were in it, what did it make? A. Well, I would say approximately a thousand dollars a month.

"Q. What happened to the thousand dollars a month that you made there? A. Well, we split with Dave.

"Q. Did Ben get any part of that thousand dollars? A. No."

Mrs. Pritchard testified that she and her husband also received their living quarters free in the rear of the building, and that during all this time they were the ones who were running the business and not Dave. The plaintiff Dave, when asked about the profit of the business under the Pritchards' management, testified:

"Q. Well, anyway, you make no denial of the fact the place did make a profit of over a thousand dollars a month during the time your sister ran it? A. I don't believe it made that. I didn't total it up. Never went through their books, or total the bills or went through their books. I never disputed their word in any way.

"Q. It might have made a thousand dollars, half of which was yours? A. It might have made ten thousand dollars. I don't know."

The general rule is, where, as here, a partner assumes the responsibility of management and operation of a partnership business, and takes over the accounts, books and bank ac-

counts thereof, he acts as trustee for the partnership, and that his books and accounts of the partnership must be full, true and exact, and that he cannot defeat the rights of his co-partner to a true settlement and a proper distribution of the assets by failing to keep full and complete accounts. Compare Hatten v. Interocean Oil Co., 182 Okl. 465, 78 Pac. (2d) 392, 116 A.L.R. 727; Wilson v. Moline, 229 Minn. 164, 38 N.W. (2d) 201.

In regard to the books of the business the court found that such books of the business as were kept were kept by Dave, but that these books are utterly unreliable and furnish no basis whatever for a determination of the respective rights of the partners, and that *Dave did make considerable more money out of the business than he accounted for.* These findings are not only fully supported by the evidence, but they as well are in accord with the whole preponderance of the evidence.

As to the books of the partnership, Clara Pritchard, called as a witness for plaintiff, on cross-examination testified:

"Q. You are a sister of both the plaintiff and the defendant? A. Yes, sir.

"Q. During the period of time you previously testified to when you were operating the place, I am going to ask you if you had any conversation with the plaintiff, Dave Hansen, concerning the doctoring of the books and records of the beer parlor at Rexford? A. I have.

"Q. Will you tell us what that was, when it was and what was said? A. That was during the time we were there. We were talking about the books. He said, 'We won't show all this profit on this business. We are going to doctor them.'

"Mr. McDonald: What books did he refer to? A. He referred to all the books.

"Q. (By Mr. Shallenberger) Do you know how much of those books were in his handwriting? A. No, I don't.

"Q. Could you explain to the court how he came to confide in you that he was going to commit this crime? A. Well I don't know that.

"Q. Is there any logical explanation that you can give as to

why he told you that? A. We were talking about the trial. We were talking about income tax, things like that. He said he never paid a great amount of income tax, and he was going to doctor the books for this too.

"Q. Do you know what he meant by 'doctoring the books?' A. He wasn't going to show so much profit.

"Q. Did he use the word 'doctor'? A. He said he wasn't going to show so much in the books, and was going to doctor the books.

"Q. Are you sure he used the word 'doctor'? A. Yes.

"Q. When was this? A. During the time we were there working for him.

"Q. During the six months you were there? A. Yes.

"Q. What time during the six months? A. Well, it was just before we took our vacation.

"Q. Who else was there? A. My husband.

"Q. Who else? A. His wife. I couldn't say for sure if she was but I think she was.

"Q. Where was it this conversation took place? A. Back in the kitchen.

"Q. Dave and his wife, you and your husband were there? A. I am quite sure all four of us were there. As to whether or not she was there I couldn't say, but I am quite sure we were all there.

"Q. How did it come you didn't inform your counsel of this conversation until just now in the hall? * * *

"Q. You are telling the truth? A. I am telling the absolute truth.

"Q. It is in the interest of justice you are volunteering this information. A. That's right."

Dave Hansen, being recalled on re-direct testified:

"Q. You heard the testimony of Clara Pritchard? A. I did.

"Q. With reference to your saying something in the latter part of '51 that you were going to doctor the books in case we had a trial. Do you remember any such conversation? A. No,

I was talking about making my income tax. There is very little in those books in my handwriting, and they are not touched.

"Q. Did you say you were going to doctor those books? A. I did not.

"Q. Just what was said on that occasion, if you remember? A. We were talking about *income tax* and *talking about this trial.* I said, 'I will not cut my other expenses so I don't have to pay so much income tax.' " Emphasis supplied.

Upon the record it further stands admitted without substan- ██ ██ contradiction that the books which Dave did keep were "doctored" as Dave himself explained, because he was going to take expenses from his sawmill and ranch and put all profits together and deduct the expense and loss to hold his income tax down. Whatever effect otherwise may be given to the so-called books kept by Dave, and his own testimony, it remains that for the purposes of an accounting here between the partners by Dave's own admission these books are not only worthless but, taken in connection with his testimony, admittedly show the partnership funds and accounts were intermingled with his ranch and sawmill business and were padded with the expenses from both of these independent operations as he saw fit in order to keep his income tax down. The testimony given by Dave and these books is so contradictory, vague and lacking in substance that this court should and does apply the rule of Casey v. Northern Pac. Ry. Co., 60 Mont. 56, 198 Pac. 141, and like decisions of this court which have held that testimony of this nature is as a matter of law worthless and accordingly to be wholly disregarded.

In cases such as this, the truth may be discovered more often from circumstances, from the personal interest of the party and from the irregularities of his transactions. The record clearly shows that from the start of the partnership until Dave filed his action each of the partners, Ben and Dave, owned one-half of all the business and property of the partnership. The court found that "Dave has effectively covered up the true

state of the business and the amount of profit actually made.''
This finding is fully supported by the evidence.

Not only were the parties to this action partners, which
relationship imposed upon the plaintiff, who was in charge
of the books and accounts, the duty of exercising the highest
good faith in all matters connected with the partnership, but
they were brothers.

Upon the foundation of the books and accounts and Dave's
testimony, there is no basis for allowing any claim made by
Dave against the partnership business or assets for claimed
contributions made by Dave during the time covered by the
accounting. This is in substance the finding of the trial judge,
that the partnership is not indebted to either member of the
partnership and the receiver should not pay any indebtedness
claimed by either partner to be owing him by the firm. This
finding is supported by the evidence and the preponderance
thereof.

It should be noted that both parties admit each was an equal
partner in the business of conducting the restaurant and bar
at Rexford, Montana, from which this controversy arises, i. e.,
from some time in 1947 until the receiver took over and closed
out the business immediately after March 21, 1952. Both parties
agree also that when the original building, which first housed
this venture, burned on December 21, 1948, their partnership
accounts were in balance.

Dave, having assumed the trusteeship, is bound to perform
the duties incident thereto. Dave used Ben's one-half
interest in the partnership as well as his own. Under such cir-
cumstances Ben is entitled to one-half the profits attributable
to the partnership business. Dave may not profit from his own
negligence in not keeping the partnership books and accounts
so as to reflect the true status of the business. R.C.M. 1947,
section 63-304, provides: ''Every partner *must account to the
partnership for any benefit, and hold as trustee for it any pro-
fits derived by him without the consent of the other partners
from any transaction connected with the formation, conduct,*

*or liquidation of the partnership or from any use by him of its property."* Emphasis supplied. And R.C.M. 1947, section 63-301(f), provides: "No partner is entitled to remuneration for acting in the partnership business * * *." And of course one who seeks equity must do equity. Another maxim of jurisprudence applicable here is provided by R.C.M. 1947, section 49-109, "No one can take advantage of his own wrong."

The court further found that "Plaintiff claims that his other business helped run the bar. Such evidence as there is indicates the contrary." The evidence clearly shows that Dave used partnership funds, without Ben's consent to make payments on his farm to the Federal Land Bank, payments on a truck and for other personal purposes. Dave closed the partnership bank account, and then opened a bank account in his and his wife's name in a different bank, and there mingled the partnership funds with his own.

Dave could have in December 1949 or at any time brought an action for the dissolution of the partnership if he had desired to do so. R.C.M. 1947, section 63-503, subdivisions (b) of (1), and (2). Dave chose to continue the partnership, thereby continuing his responsibility as trustee. Section 63-304, supra.

In Wilson v. Moline, 229 Minn. 164, 38 N.W. (2d) 201, it is held that the burden of proving the accuracy of the accounts falls on the partner who has kept the records, once a breach of good faith is shown. Under such circumstances any doubt will of course be resolved against the partner who has charge of the books and accounts or the duty to keep them. Where the accounts maintained principally by one partner are inaccurate or confused, any doubt will be resolved against that partner. See Hutchins v. Page, 204 Mass. 284, 90 N.E. 565, 134 Am. St. Rep. 656. Compare Restatement, Trusts, section 172, in part as follows:

"The trustee is under a duty to the beneficiary to keep and render clear and accurate accounts with respect to the administration of the trust." Comment b reads: "If the trustee fails to keep proper accounts, he is liable for any loss or expense re-

sulting from his failure to keep proper accounts. The burden of proof is upon the trustee to show that he is entitled to the credits he claims, and his failure to keep proper accounts and vouchers may result in his failure to establish the credits he claims.'' Comment b of Restatement, Trusts, section 172, should be read in connection with R.C.M. 1947, section 63-304, supra, and 63-305. ''Any partner shall have the right to a formal account as to partnership affairs   *   *   *.'' The uniform Partnership Act, in most part, is simply a statutory enactment of the principles developed under the common law.

R.C.M. 1947, section 63-402 (2) (a): ''A partner, subject to the provisions of this act and to any agreement between the partners, has an equal right with his partners to possess specific partnership property *for partnership purposes;* but he has no right to possess such property for any other purpose without the consent of his partners.'' Emphasis supplied.

From what has been hereinbefore stated, it follows that the findings and judgment of the trial court must be set aside insofar as Dave Hansen is given two-thirds of the net partnership proceds derived from its business and assets now in the hands of the receiver appointed by the court, who took over such business and assets from Dave Hansen on or about March 13, 1952. Such findings and judgment are not only against the overwhelming preponderance of the evidence, but they are also without any substantial support in the evidence. R.C.M. 1947, section 93-216; Bond v. Birk, 126 Mont. 250, 264, 265, 247 Pac. (2d) 199; Bordeaux v. Bordeaux, 32 Mont. 159, 165, 167, 80 Pac. 6.

Dave Hansen, as the managing partner, should be charged with all income and any profits resulting from the partnership venture during the admitted period of his management beginning in June 1949 and ending with March 13, 1952, when the receiver stepped in.

An examination of the record and the original exhibits, certified here as a part of said record, shows without substantial dispute the following facts in regard to the partnership income and profits:

For the year 1949 the trial judge found that at the end of June 1949, the bank balance of the partnership was exhausted; the business was in debt. Yet by the income tax return for the year 1949, which Dave sent Ben for him to complete and file, is disclosed a net profit for the business of the partnership of $1,200 without taking into consideration an item of $600 for depreciation, which as between the partners should be counted a profit. On the stand, under examination by counsel for the defendant, Dave admitted apart from this prepared income tax return that it was his belief ''We ended up around $1200.00 profit for the year 1949'' all of which it is evident from the court's findings and the record was earned after June of that year. It necessarily follows that Dave should be and is charged on these items for the year 1949 with one-half of this profit, or $900, for which he must account to Ben.

For the year 1950 the books submitted by Dave admit a total income of $19,192.33 against which there was established by the audit made by Accountant Miller charges on account of the business aggregating $17,381.02. We treat these figures as admissions by Dave against his interest, thereby disclosing an admitted profit of the partnership business for the year 1950 of $1,811.31, with one-half of which or $905.65 Dave shall be charged upon this settlement of the partnership business and accounts and for which he must account to Ben.

For the year 1951 the only creditable and substantial evidence in the record was the testimony given by the witness Clara Pritchard, sister of both Dave and Ben, who was called by Dave and at his suggestion. Her testimony is set forth above. Therefore for the year 1951 Dave should be charged with $1,500 upon this settlement to be paid to Ben as Ben's share of the undivided profit realized by the partnership that year.

For the year 1952 down to the appointment of the receiver who qualified and took over on March 13, 1952, there is little direct evidence to uncover and reveal the true condition of the business owing to the fact that Dave kept no creditable books or accounts. The witness Joyce McCully for the plaintiff, how-

ever, testified, *inter alia*, that she had worked in the tavern in Rexford for several years and for a time when the Pritchards were managing the business and had come back to work again tending bar on January 3, 1952, and was working there at the time this trial started on March 2, 1952; her testimony was that the business there was, "Better now than I ever seen it." And that the business "is the best I have even seen it." This summary of the business done at the partnership place of business at Frontier Club for 1952 up to the time the receiver took over is corroborated by Dave himself. On the basis of this evidence the profits realized by the partnership were not less than $500 a month and were at least as substantial in amount as during the six-month period to which Mrs. Pritchard testified. Therefore Dave should be and is charged with $687.50 as Ben's share of the partnership profits from January 1, 1952, to March 21, 1952.

The aggregate of the foregoing sums due Ben as his share of the partnership profits from July, 1949, to March 21, 1952, is the sum of $3,993.15, due from Dave to Ben, which shall be deducted from any surplus of the partnership funds in the hands of the receiver or which has been deposited in court which otherwise would be paid over to Dave as a part of his share upon the admitted basis that he and Ben were equal partners. No credit shall be given Dave for any time which he may have spent in attending to the partnership business nor for any expense which he may have incurred in that connection; this primarily because he has kept no books of account or records which truly and fairly reflect any expenses which he may have incurred in that connection and as well because it is clear that he has already paid himself out of the partnership till for both his own time and any expense which he was legitimately incurred. Likewise and for the same reasons no deductions shall be made from the various sums which we found to be due Ben for his share of the partnership profits.

Especially for the reasons herein given Dave is not entitled to any credit for expenditures which he claims to have made

on the various accounts connected with the partnership business, the building of the new Frontier Club and for other related purposes. The record here and particularly the accounts which he kept, together with his own testimony, warrant the conclusion that Dave has amply repaid himself from partnership funds and partnership money for every cent which he may have legitimately laid out.

We have reviewed all of the questions of fact as well as the questions of law arising from this record.

From what has been said it is apparent that there is in this record enough substantial evidence, which stands without material contradiction to require that under R.C.M. 1947, section 93-216, we direct a final judgment in the cause, rather than further proceedings below.

It is our finding and judgment that the findings and jugdment of the trial court be modified to accord and conform with the views which we have herein expressed. More specifically the final judgment to be entered upon the remand of this case to the trial court should therein adjudge and decree:

(1) That from the proceeds of the sale of the partnership property and business and from any other proceeds of that business now in the hands of the receiver there be paid all the debts of the partnership which have been approved by the trial court, and thereafter to the defendant Ben Hansen the sum of $3,933.15, with which Dave Hansen is surcharged as the defendant's share of partnership profits by him received and wrongfully withheld; and

(2) That thereafter from any surplus of such proceeds then remaining in the hands of the receiver there be paid one equal half of such balance to each Dave Hansen and Ben Hansen as their equal shares of that surplus;

(3) Provided always, however, that out of the partnership funds and moneys in the hands of the receiver the reasonable and legitimate expense of the said receivership and the costs lawfully incurred thereby, each as approved by the trial judge,

be first paid and discharged before any payment otherwise is made under paragraphs (1) and (2) above.

The appellant Ben Hansen shall recover his costs herein incurred.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANDERSON and DAVIS, concur.

MR. JUSTICE ANGSTMAN: (concurring in part and dissenting in part).

I agree that the judgment should be set aside but I think the cause should be remanded with directions for the court to determine whether plaintiff is entitled to all or any of the items which he claims for money borrowed and materials furnished to maintain and keep up the business. There were many such items claimed including lumber, expense of hauling logs from Columbia Falls to Rexford, charges for hauling zonolite, indebtedness of the firm charged to plaintiff personally, and many other items totalling more than $6,000. True defendant contends that none of these items was properly allowable but we are not favored with a finding by the court on the subject or if so the findings on the subject are conflicting.

The court specifically found that plaintiff has been "the moving spirit in giving the property" its present net value of $13,000. The court found that plaintiff "has borrowed money and furnished materials to build it up. He is entitled to much more than Ben." The court then proceeded as follows: "The court's guess is that the partners have just about earned the business as it is now, and that Dave has earned twice as much as Ben" and then concluded to divide the amount realized by the receiver one-third to Ben and two-thirds to plaintiff.

It is true that in its conclusions of law the court stated: "The partnership is not indebted to either member of the partnership, and the receiver should not pay any indebtedness claimed by either partner to be owing him from the firm." That conclusion is inconsistent with the finding that Dave "borrowed

money and furnished materials to build it (the partnership business) up. He is entitled to much more than Ben.''

I think the court should be required to make specific findings on the several items above referred to as well as on items of credit which defendant contends he should have. I would allow this to be done either on the evidence now before it or on such further evidence as either party may desire to submit.

I do not believe this court should become the trier of the facts on the cold record unaided by the personal presence of the witnesses and without the benefit of findings on the part of the trial judge.