No. 12450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

BEN R. ARNOLD,

                  Plaintiff and Respondent,

-vs-

LEO J. CREMER, JR.,

                  Defendant and Appellant.

---

Appeal from:  District Court of the Sixth Judicial District,
               Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        William R. Morse argued, Absarokee, Montana
        C. E. Laws appeared, Absarokee, Montana

    For Respondent:

        John R. Kline argued, Helena, Montana

---

Submitted:  September 27, 1973

Decided: NOV 13 1973

Filed: NOV 13 1973

<span style="font-style: italic;">Thomas J. Kearney</span>
                     Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment entered by the district court of the sixth judicial district, Park County, after that court adopted the report and findings of a Special Master in what developed as an accounting. Judgment in the amount of $10,749.82 was entered for plaintiff.

The action was brought by plaintiff Ben R. Arnold to recover from defendant Leo J. Cremer, Jr. moneys owed arising out of various transactions between plaintiff and defendant, including an oral partnership. Plaintiff's action in part was for a partnership accounting. Plaintiff as manager of the partnership submitted his accounting which showed a deficit in defendant's account which plaintiff was entitled to. The Special Master determined that to be $5,862.95. Plaintiff also claimed and was found to be owed: $4,674.40 for 46 heifers purchased by plaintiff for defendant; $212.47 interest on option money borrowed by plaintiff for defendant's benefit.

Plaintiff and defendant were long-time friends and both had been in the cattle business for years. In 1959, they entered into an oral partnership agreement on a farming and ranching venture. Plaintiff had acquired a lease from one George Wepler. Defendant had cattle to put on the leased land. Both parties had ranch operations of their own. The partnership was operated under the name of Arnold Livestock Company. Capital and income was to be equal. Operation and management of the venture was to be by plaintiff. Other than the name of the partnership, place of operation, and agreement on division of capital and profit, no terms were agreed upon. Such was the informality of the agreement.

A bank account was opened and plaintiff, defendant and defendant's son were authorized to write checks. Plaintiff, however,

was the only one who wrote checks on the account. All of the bank statements, deposit slips and checks were kept.

Plaintiff, at the direction of his accountant, kept other records of the partnership affairs in which he recorded receipts and disbursements for the years 1961, 1962, 1963 and 1964.

In this regard, the Special Master found:

"4. The managing partner maintained accounting records for the partnership until December 31, 1963. These records were used in the preparation of the partnership income tax returns. The partnership books for the year 1964 were maintained by accountant M. L. Smith, who prepared the 1964 partnership income tax return.

"5. The accounting records as maintained by Plaintiff are fairly common to the farm and ranch industry. Receipts are deposited in the bank and disbursements are made by check drawn on the bank. The receipts and disbursements are then classified and entered under appropriate columns in either the income or the expense columns provided in 'National Farmers' Income Tax Record', a copyrighted booklet sold for the indicated purpose. The booklet does not provide for double entry bookkeeping and thus does not within itself contain controls against errors and omissions."

Plaintiff testified that each year he went over the books with defendant. Defendant denied he had ever examined the books, but admitted Arnold offered to let him examine them. In addition, during the years from 1959 through 1963, the partnership tax return was prepared by Mr. Schreiner, plaintiff's accountant. Thereafter, defendant's accountant M. L. Smith prepared the partnership return.

Plaintiff withdrew money from the partnership account for his personal use and recorded the withdrawals as loans to himself on the partnership books. Plaintiff's withdrawals were with the knowledge and consent of defendant Cremer. Plaintiff's uncontradicted testimony was that none of the items listed in the books as expense items were used for his own personal livestock business.

Defendant's accountant, M. L. Smith, kept the books for Arnold Livestock Company after 1963. Smith had worked for defendant's organization since 1935 and was still working for it on June 19, 1968, when his deposition was taken.

The Wepler lease ran out after three years. A three year lease on the Hanson place was obtained by plaintiff when the Wepler lease still had a year to run.

Plaintiff kept a personal ledger in which was recorded the barley that he and defendant, as individuals, supplied to the partnership. Plaintiff kept the weigh slips which were admitted at trial as plaintiff's Exhibit 8-1. Plaintiff and M. L. Smith used records that belonged to the elevator company to get some of the information as to the grain supplied.

On April 1, 1963, Arnold Livestock Company purchased and paid for 400 head of yearling heifers from defendant for $50,000. Defendant Cremer actually moved 436 yearling heifers on to the Hanson lease. Although defendant got the 436 heifers back, he never paid to the partnership the $70,000 the contract called for.

The Internal Revenue Service audited the partnership records in 1962.

Plaintiff borrowed money on behalf of the partnership.

Plaintiff's personal records for 1959 through 1963 were introduced in evidence as Exhibits 13 through 22. These were the same type of records kept for Arnold Livestock Company. They were kept in a like manner. Plaintiff kept his personal income and expenses separate from those of the partnership.

Both plaintiff and defendant used men hired by the partnership to help out on their individual operations.

Defendant Cremer used the Hanson lease for his own cattle without reimbursing the partnership.

Upon dissolution of the partnership, M. L. Smith (who was defendant's and also the partnership's accountant after 1963) was hired to make an accounting. The prices entered on the books for cattle were established by defendant Cremer. Elevator figures were used to determine defendant's barley contribution at defendant's request.

In making his findings in regard to the partnership the Special Master had bank records from the Yellowstone Bank; the testimony of Wallace E. Schreiner; the partnership U.S. tax returns; the Smith deposition and Smith's accounting and the tax returns he prepared; the testimony of Charles McCartney, C.P.A. and his reconstruction of the records; the testimony of Dallas VanDelinder, C.P.A.; and "the entire file in the case, including depositions taken prior to trial but not put in evidence."

On the above facts the Special Master found in addition to other facts the following, which is amply substantiated by the record and exhibits:

"17. The following balance sheet reflects the assets and capital accounts of the partnership at the time of discontinuance of the partnership business and at the time of the hearing as determined from the testimony and exhibits and the foregoing findings of fact:

ASSETS

| | |
|---|---|
| Cash in Yellowstone Bank | $ 226.39 |
| Due from Leo J. Cremer, Jr. | 70,000.00 |
| TOTAL ASSETS | $70,226.39 |

CAPITAL ACCOUNTS

| | |
|---|---|
| Leo J. Cremer, Jr. | $64,137.05 |
| Ben R. Arnold | 6,089.34 |
| TOTAL CAPITAL ACCOUNTS | $70,226.39 |

"18. Plaintiff claims $500 for the use of and $100.00 for damage to combines alleged to have been used by Defendant. The evidence does not establish that the use of the combines was by the Defendant or under circumstances rendering Defendant liable for same.

"19. The partnership entered into a written agreement with Defendant (Plaintiff's Exhibit 8-2) whereby the partnership agreed to purchase 400 heifers from Defendant, breed and feed them from April 1, 1963 to November 15, 1963, at which time Defendant agreed to buy them back for $70,000.00. The partnership paid for the heifers. Defendant took the cattle back prior to November 15, 1963, with the complaint that Plaintiff had caused Defendant and the partnership to be over-stocked with cattle. The evidence is conflicting on the question of the necessity to remove the animals and is insufficient to support any change in the written agreement. Defendant is indebted to the partnership for the sum of $70,000.00 as provided in the agreement."

- 5 -

As to his two findings for the plaintiff on matters outside the partnership accounting, the Special Master found:

"20. Plaintiff purchased for the account of and delivered to Defendant 46 heifers on or about September 30, 1961, for the sum of $4,674.40. Plaintiff drew a draft on Defendant for $4,000.00 which was refused twice and then honored. Plaintiff thought the draft had been credited to him, but it was credited to the capital account of Defendant in the partnership on October 27, 1961. Defendant has not paid Plaintiff for said heifers and is indebted to him for the sum of $4,674.40 on account thereof.

"21. Plaintiff leased certain lands from Robert P. Hanson and Dorothy M. Hanson, husband and wife, under the terms of a written agreement dated November 22, 1961 (Plaintiff's Exhibit 7). The rental for said lease was paid by the partnership and the lands were used by the partnership in its business. The lease contained an option to purchase the leased premises at any time prior to December 1, 1964. At the request of Defendant, the Plaintiff exercised the option for the benefit of the Defendant. In order to do so, Plaintiff borrowed $35,412.19 on his own account at the Yellowstone Bank, Columbus, Montana. Subsequently, a dispute arose between the Hansons and Plaintiff concerning performance of the lease agreement and status of the option to purchase. In settlement of the dispute, the option was cancelled. Defendant was a participant with Plaintiff in the negotiations leading up to settlement of the dispute by cancellation of the option, both having gone to the same attorney to represent them in the dispute with the Hansons. There is a conflict in the testimony as to the reason for cancellation of the option, but it does not appear that the cancellation was the fault of the Plaintiff. Plaintiff paid interest of $212.47 on his loan of $35,412.19 and is entitled to reimbursement from the Defendant therefor."

The Special Master concluded:

"22. In summary of the foregoing findings, The Special Master finds that Plaintiff has rendered an accounting of the partnership affairs to Defendant, and as a result of such accounting and of other dealings between Plaintiff and Defendant as set forth above, Plaintiff is entitled to the balance of $226.39 in the partnership bank account in the Yellowstone Bank, Columbus, Montana, and is further entitled to have and recover from Defendant the sum of $10,749.82. * * *"

The issues set forth by appellant-defendant are four. The first issue, termed by appellant as the main issue, is: Whether a sole managing partner has sustained his fiduciary burden as a trustee with regard to accuracy of recordkeeping; and with

- 6 -

regard to commingling of partnership assets with his personal assets in various ways. The other three issues include (1) the receipt in evidence by the Special Master of "unsupported bank statements", (2) the acceptance by the district court of the Special Master's findings, and (3) whether this Court should do an accounting of its own. These latter three issues are not issues as such, since they all bear on the single issue of whether the evidence submitted at the hearing was of a kind and of a sufficiency to sustain the findings.

The entire thrust of appellant's position in the district court and here is that as a fiduciary the managing partner was under a strict duty of maintaining detailed records of each transaction and that the managing partner was held to an "especially high" degree of duty. Then, appellant argues, where accounts are not kept with such detail and accurateness as to be capable of an "audit" in a strict sense, the presumptions are against the one causing it. Appellant states that to prove an item, plaintiff must have accounts and vouchers for each item and cites in support Hansen v. Hansen, 130 Mont. 175, 179, 297 P. 2d 879. He then states that the Special Master considered the accounting on an ordinary partnership basis, rather than involving a sole managing partnership.

We have considerable difficulty in grasping appellant's reasoning here. We do not disagree with the rules of law and accounting that appellant urges, but rather their application to the facts. Appellant seems to argue that plaintiff could not have an accounting because his bookkeeping was not perfect or that there was commingling of funds and other business. However, the Special Master found that plaintiff had rendered an accounting. On items that plaintiff did not prove, the Special Master did not allow.

In summary appellant states that plaintiff has committed a host of acts of impropriety in breach of his trusteeship as a

sole managing partner; he has taken cash; he has sold his own personal goods to the partnership at a personal profit; he has commingled his own business with that of the partnership; and, he cannot account for missing cattle. Then appellant states: "In short he [plaintiff] is in serious trouble!"

Appellant again urges that once a breach of trust has been established, the entire accounting is suspect and the managing partner must have all presumptions considered conclusively against him.

We have examined the entire record. We find nothing as in Hansen, where the Court found the books were "utterly unreliable and furnish no basis whatever for a determination of the respective rights of the partners * * *." Rather we find, as the Special Master and the district court found, that an accounting was made; that plaintiff did not get credit where he did not have clear, satisfactory proof of the same; and that the informal partnership was conducted in a manner known to both parties.

We find no error and affirm the judgment.

_Wesley Castles_
Justice

We Concur:

_Chief Justice_

_Justices_

Hon. Alfred B. Coate,
District Judge, sitting for
Justice John Conway Harrison.